[Crim. No. 1260.   Fourth Dist.   June 11, 1959.]

THE PEOPLE, Respondent, v. WILLIAM G. BERNSTEIN, Appellant.

280

Leo R. Friedman and Charles R. Perry for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—A jury rendered a verdict finding defendant-appellant guilty of statutory rape on November 25, 1957, in violation of section 261, subdivision 1, of the Penal Code.

He was sentenced to six months in the county jail in accordance with the recommendation of the jury.

Madeline, the prosecutrix, 16 years of age at the time the offense charged was committed, was an unmarried high school student when she first met defendant professionally in his office on June 10, 1957. He was a licensed physician who limited his practice to psychiatry and neurology, conducted his practice in an office in Fresno, where he employed a nurse, who also acted as his receptionist and secretary. At the first interview Madeline's mother disclosed to defendant that her daughter had been suspended from school after having had sexual intercourse with several boys at a party. She also told him that her daughter was intractable, unhappy, lied frequently to get out of trouble, and that she had been unconscious for 24 hours following an automobile accident on one occasion.

Defendant, for $20 per call, undertook to administer psychiatric treatment to Madeline in a series of interviews scheduled for Mondays, initially, at 3:30 p.m. and later at 4:30 p.m. Normally, the conferences began later than the scheduled time and lasted from an hour and a half to two and a half hours. At first the conferences would end at about 5 or 6 p.m. at which time the nurse would still be in the office, but after about four months a new nurse was hired and she never was present at the termination of Madeline's treatments.

The conferences were held in the defendant's private office which contained a couch as well as the customary desk and chairs. Only defendant and Madeline were present and the door was always closed. At first the conferences consisted of conversations conducted across the desk concerning Madeline's past life. One afternoon as Madeline began to leave she was crying and defendant put his arm around her and kissed her forehead. After this time the conferences began with conversations across defendant's desk. Then, after half an hour or forty-five minutes had elapsed, defendant would close the blinds and they would move to the couch and kiss and fondle each other. On one occasion defendant removed his shirt and T-shirt saying it was hot. Finally, on November 25, 1957, the affair culminated in defendant's having sexual intercourse with Madeline, and this action is the basis of the conviction. Thereafter she called her mother who took her home. About two or three weeks later she told Joan, a friend, about the affair, who apparently told her parents and the treatments were stopped. The authorities were later notified. On February 11, 1958, the prosecutrix telephoned defendant from

juvenile hall. With her consent, Policewoman McCracken made written notes of what she heard. Excerpts from the conversation include the following statements:

"MADELINE: Dr. Bernstein, this is Madeline . . . I don't know what to do. My folks know that you and I had sexual intercourse and they are having a fit.

"DEFENDANT: Don't worry. There's nothing to indicate anything. Where are you calling from?

"MADELINE: I am calling from home. . . . I don't know how they found out.

"DEFENDANT: Don't worry, they haven't found out anything yet. . . .

"MADELINE: . . . What am I going to do? . . .

"DEFENDANT: Come on down to my office. If it gets too bad ask them to bring you down with them. I am not worried. There is nothing they can prove."

Two days later a similar call was made and recorded on tape by means of an induction coil. This tape recording was admitted into evidence over objection and played before the jury. Excerpts from the conversation are:

"MADELINE: Dr. Bernstein?

"DEFENDANT: Yes.

"MADELINE: Listen, I am in really a jam. . . . Why did you tell my dad that we did have sexual relations?

"DEFENDANT: I didn't.

"MADELINE: He said that you admitted everything.

"DEFENDANT: I did not.

"MADELINE: That's what he told me.

"DEFENDANT: Sorry. I told you I wouldn't . . .

"MADELINE: Yes, I know, but nevertheless I haven't admitted anything.

"DEFENDANT: He told me that you admitted everything.

"MADELINE: He told you that I admitted everything?

"DEFENDANT: That's what he told me.

"MADELINE: . . . I don't know what to do. . . .

"DEFENDANT: Well, sit tight.

"MADELINE: . . . He (father) wants to take me down to the D.A.'s office and tell them everything.

"DEFENDANT: I know. Boy, that would really fix things, wouldn't it?

"MADELINE: What can I do? . . .

"DEFENDANT: . . . If you do that, then you're really in a jam.

"MADELINE: Why?

"DEFENDANT: Then probation, and as far as I am concerned it would make a Hell of a stink in the papers.

"MADELINE: Yes, but you are trying to get away from the fact that it actually happened and we can't——what can we do? It happened, you know that and I know that, but how are we going to keep everybody else from knowing it?

"DEFENDANT: Nobody knows.

"MADELINE: Yes, I know, but we do and what can we . . .

"DEFENDANT: Nobody else knows it and as long as you can sit tight . . .

"MADELINE: . . . I can't do a . . . thing around my own house.

"DEFENDANT: Well, I'll tell you one thing, if you think talking about it to the D. A. will make it any better, if you think you've got Hell now you should wait until you try that.''

The district attorney offered a recording of a third telephone conversation between the defendant and Madeline's father, but an objection by the defense that this conversation contained no admissions by the defendant was sustained by the trial court.

On cross-examination Madeline admitted that she had previously had intercourse with several boys; that she was in juvenile hall when the telephone conversations were made and at the time of the preliminary examination; that she had discussed the case with an assistant district attorney four to six times while in juvenile hall; that when she was first placed in juvenile hall she denied having intercourse with the defendant; and that later she admitted that she had had intercourse with him. She admitted that it was her habit to lie if she could get out of trouble by so doing, and that she found living in juvenile hall unpleasant.

Defendant denied entirely the testimony given by Madeline about amatory activity between them, stating that his conduct toward her was always proper and of a professional nature and involved no physical contact on the couch or elsewhere. He did not dispute the accuracy of the telephone conversations but explained she seemed upset and he tried to pacify her and for that reason did not contradict her.

The first question to be considered on this appeal is whether the court properly admitted into evidence a conversation between the complaining witness and defendant. Defendant contends this conversation did not contain admissions on his part, but on the contrary contained denials of accusatory

statements. The evidence was properly submitted to the jury for its consideration. ▮ See *People* v. *Davis*, 43 Cal.2d 661 [276 P.2d 801], where it was held (quoting from syllabus [7]):

"When response to accusatory statement consists of evasion, equivocation or silence, it is for court in first instance to determine whether import of statement is such that it would furnish foundation for proof of conduct, and it is then for jury to decide whether, under circumstances shown, statement called for disclaimer, whether accused replied to it, and whether, if he did not do so, such failure showed criminal intent or consciousness of guilt."

▮ Conduct of a person charged with a crime is admissible when it shows a consciousness of guilt. (42 Cal.Jur.2d p. 280, § 91.) ▮ The jury was properly instructed that evidence of admissions should be viewed with caution, and that a conviction could not be predicated solely upon such evidence. ▮ Defendant's explanation of the affair created only a conflict in the evidence which was a question of fact for the jury to determine. (*People* v. *Davis*, 43 Cal.2d 661 [276 P.2d 801]; *People* v. *Simmons*, 28 Cal.2d 699 [172 P. 2d 18], and cases cited.

Defendant next contends that the trial court erred in allowing Madeline to testify on her examination in chief that she had discussed with a friend the incident of November 25, 1957, claiming that this evidence was hearsay and self-serving. The prosecutrix testified she did not tell her parents about this affair but that about two weeks later, while defendant was still treating her, she told her girl friend about it. Apparently no objection to this testimony was made until inquiry was made as to the name of her girl friend. Objection was then made, as being immaterial and calling for hearsay. It was overruled and the name was given. A motion to strike the previous questions and answers on the grounds of being incompetent, irrelevant and immaterial and because such conversation did not amount to a complaint, was denied. No further testimony was allowed concerning the nature or contents of the discussion or complaint. Defendant claims prejudicial error in this ruling, citing *People* v. *O'Donnell*, 11 Cal.2d 666 [81 P.2d 939], quoting from *People* v. *Perkins*, 8 Cal.2d 502 [66 P.2d 631], which said that to be within the rule of res gestae "the declaration must be 'the natural and spontaneous outgrowth of the act or assault' and not a mere narration of a past transaction." (See also *People* v.

*Wilmot,* 139 Cal. 103, 105 [72 P. 838]; *People* v. *Adams,* 14 Cal.2d 154, 158 [93 P.2d 146]; and *People* v. *Huston,* 21 Cal.2d 690 [134 P.2d 758].) ■ The fact that a prosecutrix makes an early complaint is admitted solely for the purpose of corroborating her testimony. (*People* v. *Finkel,* 70 Cal. App.2d 508 [161 P.2d 298]; *People* v. *Hubbell,* 54 Cal.App.2d 49 [128 P.2d 579]; Fricke, California Criminal Evidence, p. 54.)

■ The statement made by the prosecutrix to the girl friend would probably not amount to a complaint (in a technical sense) that she had been violated. Assuming the objection to this testimony was timely and sufficient, we do not feel that the admission of it, as limited, even if erroneous, was prejudicial under the facts related, particularly where defendant's counsel, on cross-examination of the prosecuting witness and others, attempted to show that her testimony might have been fabricated in an effort to win favor with the officials in whose custody she was held. The conversation with the girl friend before the mother contacted the officers and before the prosecutrix had any conversation with them might be material.

■ In *People* v. *Walsh,* 47 Cal.2d 36 [301 P.2d 247], it was held that where the opposition has assailed the testimony of a witness as being of recent fabrication, an exception to the hearsay rule allows the admission of evidence of statements or of conduct prior to the claimed fabrication and consistent with the testimony of the witness at the trial, not to prove the facts of the case, but as tending to show that the witness has not been controlled by motives of interest and that he has not fabricated something for the purpose of the case. (See also *People* v. *Kynette,* 15 Cal.2d 731, 753 [104 P.2d 794].)

■ Next, it is argued that the trial court erred in refusing to give defendant's proffered instruction on the question of the credibility of the prosecution witness. It was lengthy and contains nothing more than defendant's version and evaluation of the facts as they might bear on the credibility of her testimony. ■ It is the general rule that instructions which single out the credibility of a single witness and charge the jury with particular reference thereto should not be given. (*People* v. *Wescott,* 99 Cal.App.2d 711, 716 [222 P.2d 256]; *People* v. *Roth,* 137 Cal.App. 592, 606 [31 P.2d 813].)

■ The trial judge did give general instructions as to the credibility and impeachment of witnesses and admonished

the jury that a charge such as that made against the defendant in this case is one which, generally speaking, is easily made, and once made, is difficult to disprove, and that "the law requires that you examine the testimony of the prosecution witness with caution." From our examination of the entire record and the other instructions given favorable to the defendant, his rights were amply stated and protected in the court's general charge to the jury and no prejudicial error appears. (*People* v. *Corey*, 8 Cal.App. 720 [97 P. 907]; *People* v. *Huston*, 21 Cal.2d 690 [134 P.2d 758]; 42 Cal.Jur.2d, Rape, § 98, p. 288.)

Judgment and order denying a new trial affirmed.

Mussell, J., concurred.