812 P.2d 797

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Waldemar C. LEIDING,**
**Defendant–Appellant.**

No. 11775.

Court of Appeals of New Mexico.

April 23, 1991.

Certiorari Denied June 4, 1991.

Tom Udall, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Michael E. Vigil, Marchiondo, Vigil & Voegler, P.A., Albuquerque, for defendant-appellant.

OPINION

APODACA, Judge.

Defendant, a psychologist, appeals his jury convictions on four counts of second degree criminal sexual penetration (CSP II) and five counts of third degree criminal sexual penetration (CSP III). The indictment charged that defendant committed CSP II or CSP III on three adult patients. The trial court granted defendant's motion for a separate trial with respect to each victim and the embezzlement charge. The state elected to proceed on counts of CSP II and CSP III involving only one of the victims. Although defendant raises twelve issues on appeal, his essential challenges to his convictions are based on seven basic arguments, one of which is that no crime was committed under New Mexico law. We hold that defendant's conduct did not constitute the crimes of CSP II or CSP III and reverse the convictions, with instructions that the criminal charges be dismissed and defendant discharged. Because of our disposition, we need not address defendant's other issues.

Defendant contends that consensual sex between a therapist and his adult patient is not a crime in New Mexico because, unlike other states, our state legislature has not enacted a criminal statute concerning sexual relations specifically between a therapist and a patient. *See, e.g.,* Minn.Stat. § 609.345(1)(j) (1990) (a psychotherapist who engages in sexual contact with a patient or former patient, even with the latter's consent, is guilty of criminal conduct if the contact occurred by means of therapeutic deception).

Defendant argues that, although the crime of criminal sexual penetration can be committed by a therapist, the state, in this appeal, erroneously maintained that

every instance of sexual contact between a therapist and patient, whether or not consensual in nature, constitutes unlawful sexual penetration. Defendant argues that the state, in so contending, strains the statutory language in an attempt to make it fit the facts of this case. For defendant's actions to rise to the level of the commission of a crime, defendant insists the legislature must enact a statute specifically prohibiting sex between a therapist and his patient. We agree.

CSP II and CSP III require the state to prove that the offense of criminal sexual penetration was committed through the use of force or coercion. NMSA 1978, § 30–9–11 (Cum.Supp.1990). In the context of this case, force or coercion means the perpetration of criminal sexual penetration "when the perpetrator knows or has reason to know that the victim ... suffers from a mental condition which renders the victim incapable of understanding the nature or consequences of the act." NMSA 1978, § 30–9–10(A)(4) (Repl.Pamp.1984).

Defendant's argument focuses on the state's use of a therapy phenomenon known as transference to prove that the victim suffered from a mental condition rendering him incapable of understanding the nature and consequences of the sexual acts with defendant. According to expert testimony presented at trial, "transference," as applied to a therapist-patient relationship, is the emotional response that the patient in therapy has toward the therapist. Under the phenomenon, the patient unconsciously attributes to the therapist those feelings that may have been suppressed toward others close to the patient, such as parents.

The state asserts that a therapist is easily able to detect when transference has occurred in therapy. " 'Inappropriate emotions, both hostile and loving, directed toward the [therapist] are recognized by the psychiatrist as constituting ... the transference.' " *L.L. v. Medical Protective Co.,* 122 Wis.2d 455, 461, 362 N.W.2d 174, 177 (Ct.App.1984) (quoting M. Heller, *Some Comments to Lawyers on the Practice of Psychiatry,* 30 Temp.L.Q. 401, 401–02

(1957)). The development of the transference may be marked by signs that the patient identifies with the therapist, such as learning to think, style, and model himself after the therapist. *Id.* 122 Wis.2d at 461, 362 N.W.2d at 177 (quoting D. Dawidoff, *The Malpractice of Psychiatrists* 6 (1973)). Dr. Martin Orne, a psychiatrist-psychologist who testified for the state, gave an example of this emulation when he observed one of his patients change his brand of cigarettes to an offbeat foreign brand used by Dr. Orne. In this appeal, according to evidence adduced at the trial, the victim's purchase of a Fiat automobile similar to the one driven by defendant was recognized as a sign that transference was occurring in the therapeutic relationship.

The state's theory, pursued at trial, was that defendant committed the offenses of CSP II and CSP III on his adult patient, while acting as a psychotherapist, utilizing force or coercion. The state also contended at trial that defendant overcame the will of his patient, knowing that the patient experienced a "transference phenomenon," thus submitting to defendant's sexual advances.

Defendant's contentions on appeal are premised on a theory that transference occurs in every therapeutic relationship. He argues that, should this court accept transference as a means of establishing force or coercion under the criminal sexual penetration statute, the result will be unconstitutional. Because of the basis for our disposition of this appeal, however, our holding need not reach constitutional dimensions. Instead, we find it necessary only to construe the legislative language of our CSP statute.

At trial, to prove the requisite "force or coercion" under the transference theory, the state relied heavily on the testimony of expert witnesses. Dr. Orne testified that a patient cannot be ready, willing, and able to consent to a sexual relationship with his therapist because it is not an equal relationship. Dr. Orne concluded that a patient does not and cannot understand the consequences of the act. The state also presented the testimony of Dr. Carl Adams, a psychologist. Dr. Adams testified that the

victim's mental condition left him unable to understand the consequences of engaging in sex with defendant, his therapist. Dr. Adams stated that patients are not capable of consenting to sexual relations in therapy and that it is impossible for an individual to fully appreciate what will happen to him at a later date. He further testified that, because of the nature of the relationship between a therapist and his patient, the transference phenomenon, and the view a patient has of his therapist as an authority figure, the patient cannot consent and cannot know the long-term consequences of having sex with his therapist.

The specific question we must address in this appeal is whether the transference phenomenon alone, and the expert testimony explaining it as it applied to defendant's relationship with the victim, was sufficient to prove the existence of the "force or coercion" necessary to convict defendant under our CSP statute. We first observe that there is no contention that this appeal involves any *mental condition* rendering the victim incapable of understanding the consequences of the act, other than what may be attributed to the transference phenomenon. Additionally, this appeal does not involve CSP specifically under Section 30–9–11(B)(1) (when the perpetrator is in a position of authority over the victim), because that type of CSP applies only to victims between the ages of 13 and 16, a situation not present here.

 Based on basic statutory construction principles, we do not believe the legislature intended the transference phenomenon and the expert testimony at issue here as sufficient to bring the conduct of defendant within the prohibitive grasp of the CSP statute, at least in the absence of more precise or clearer statutory language. *See State v. Bybee,* 109 N.M. 44, 46, 781 P.2d 316, 318 (Ct.App.1989) ("it is a fundamental rule that crimes must be defined with appropriate definiteness").

We also base our holding on the proposition that penal statutes must be strictly construed, and any doubts about their construction must be resolved in favor of lenity. *State v. Bybee; State v. Keith,* 102 N.M. 462, 697 P.2d 145 (Ct.App.1985). Additionally, penal statutes must be of sufficient certainty that a person will know that his act is criminal when he commits it. *State v. Collins,* 80 N.M. 499, 458 P.2d 225 (1969). We cannot be certain that even a trained psychologist would be on notice, under the statutory language here, that his having sexual relations with a consenting patient would be deemed criminal in nature under Sections 30–9–10 and –11. *Cf.* Minn. Stat. § 609.345(1)(j) (sexual contact between psychotherapist and patient is criminal sexual conduct if the contact occurred by means of therapeutic deception).

There are two elements of the type of CSP involved in this appeal that concern us. First is the "mental condition"; next is the "understanding the nature or consequences" of the act. *See* 30–9–10(A)(4). To read either of these elements as the state suggests would open the door, we believe, to harmful results. If the requisite "mental condition" was satisfied by existence of the transference phenomenon, would it likewise be satisfied by a patient's intelligence level or his or her desire to be dominated? If the requisite "understanding of the consequences" was satisfied by the evidence at trial here that the victim did not realize the impact the sexual relations with defendant would have on him, would it likewise be satisfied by any sexual partner's second thoughts after the occurrence? One need only pose these questions to realize immediately the weakness in the state's reliance on the transference phenomenon to prosecute defendant under the CSP statute. Indeed, we consider the state's argument on the phenomenon too novel in nature to construe the statute in the broad-brush manner advocated by the state.

Our disposition of this appeal is dictated by the state's choice to prosecute defendant under our CSP statute, rather than under some other pertinent statute. We observe that, in prosecuting defendant under the CSP statute based on the theory of the transference phenomenon, the state took the risk of stepping too far afield and, as a result, we conclude that it exceeded

the limits of the statute's application. As a reviewing court,

> we [must] take care we do not blur those often fine-line junctures of criminal elements, where one crime ends and another begins. Ultimately, it is the prosecutor who will discretionarily determine what criminal charge to bring against a particular defendant; where one crime does not fit, another may. But let us not lose sight of the constitutional risks involved in applying a criminal statute with too broad a brush.

*State v. Sanchez,* 105 N.M. 619, 623, 735 P.2d 536, 540 (Ct.App.1987) (Apodaca, J., specially concurring).

In summary, we hold that defendant's conduct did not constitute the crime of CSP under the pertinent statutory language. As we have stated before in the context of other cases, if the legislature desires to make psychologist/patient sex a crime, it can certainly do so, subject only to constitutional limitations. But doing so requires legislative therapy, not judicial surgery. *See Garrison v. Safeway Stores,* 102 N.M. 179, 692 P.2d 1328 (Ct.App.1984). We are limited in our review to construing the statutory language to arrive at the legislative intent. We reverse the convictions and remand to the trial court with instructions to dismiss the criminal charges and to discharge defendant on the CSP counts.

IT IS SO ORDERED.

DONNELLY, J., concurs.

BIVINS, J., specially concurring.

BIVINS, Judge (specially concurring).

I concur in both the result and the discussion; I write separately to explain more fully the rationale for my view, now agreed upon by the panel. I will first discuss the statute under which defendant was charged and the evidence relied upon to sustain the convictions. This review will demonstrate why defendant cannot be convicted under the charges brought.

NMSA 1978, Section 30–9–11(B) (Repl. Pamp.1984), as charged in this case, provides that criminal sexual penetration in the second degree (CSP II) consists of all criminal sexual penetration perpetrated by use of force or coercion which results in personal injury to the victim. CSP II is a second-degree felony. CSP III, a third-degree felony, differs only in that personal injury to the victim need not result.

The "force or coercion" requirement is defined in NMSA 1978, Section 30–9–10(A) (Repl.Pamp.1984), and with respect to this case means "perpetrating criminal sexual penetration ... when the perpetrator knows or has reason to know that *the victim ... suffers from a mental condition which renders the victim incapable of understanding the nature or consequences of the act.*" (Emphasis added.)

The state makes no claim that defendant used force in the physical sense. Its theory is simple and straightforward. The state contends that as a result of the therapist-patient relationship, a phenomenon known as transference occurred, which satisfied the mental condition requirement of the statute. The state makes no claim that the victim suffered from any mental disorder or mental disease or that he was incapable of understanding the nature of the act. It claims only that transference, a term I describe in more detail later, rendered the victim incapable of understanding the consequences of the act. That consequence was in the form of an emotional disorder known as post-traumatic stress syndrome, which also formed the basis of the personal injury for those counts alleging CSP II.

The question of whether sex between the therapist and his patient under the state's theory and the facts supporting that theory constitutes rape under the statute is essentially one of statutory construction. Does the operative language embrace the circumstances under which sex occurred here, or did the legislature intend something more constrictive?

In examining the language "suffers from a mental condition which renders the victim incapable of understanding the nature or consequences of the act," one has little difficulty in applying the statute to the case where, for example, an individual is sexually violated but who, because of se-

vere mental incapacity, has no understanding of the act or its consequences. In that scenario, the victim would not be expected to resist because he or she would have no idea what was happening. The same might be said where the victim was unconscious. Most would readily agree that sexual penetration under those circumstances violates the statute and subjects the perpetrator to criminal liability. But can the same be said where the victim is neither mentally ill nor oblivious to the act, as in the case before us? To answer these questions, it is necessary to look more closely at the facts, which must be viewed in a light favorable to support the verdicts of guilt. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978).

Victim was referred to defendant in the fall of 1979 with a history of adolescent problems, confusion about his identity, and confusion about his sexual orientation or preference. He was fourteen years old at the time he first saw defendant. Victim had experimented with homosexuality at around age eleven or twelve. Later, he became sexually involved with a male high school teacher. This relationship extended from the summer of 1979 to the early months of 1980. Because of concerns over this relationship and problems with students at school, victim's parents sought help.

After a close relationship had developed between victim and defendant through therapy, defendant initiated sexual advances which culminated in the acts for which defendant was charged and numerous other acts not charged. It is important to understand that, although homosexual activity commenced early in the therapy, defendant was not charged with any acts prior to the time victim was over seventeen years old. The counts charged were for acts occurring in 1982 and in 1987. Victim would have been about twenty-two years old in the later year. It can be assumed no charges were filed before the 1982 dates because the statute of limitations barred prosecution. *See* NMSA 1978, § 30–1–8 (Repl.Pamp.1984). No charges could be filed between 1983 and 1987 because victim terminated the therapy in 1983 and did not return until four years later.

I provide the dates and victim's ages to make clear we are not dealing with CSP as relates to victims under or within certain age limits. For example, CSP in the first degree occurs when criminal sexual penetration is perpetrated on a child under thirteen years of age. § 30–9–11(A)(1). CSP II may consist of criminal sexual penetration perpetrated on a child thirteen to sixteen years of age when the perpetrator is in a position of authority over the child and uses the authority to coerce the child to submit. § 30–9–11(B)(1). Although not in effect at the time, the legislature has added a new section making all criminal sexual penetration not covered by the prior section a fourth-degree felony where perpetrated on a child thirteen to sixteen years of age when the perpetrator is at least eighteen years of age and is at least four years older than the child. NMSA 1978, § 30–9–11(D) (Cum.Supp.1990). *See Perez v. State,* 111 N.M. 160, 803 P.2d 249 (1990). (construing new provision to permit as a defense perpetrator's good faith belief that victim was over age of sixteen). We are concerned only with the criminal sexual penetration by force or coercion as that term is defined: when the perpetrator knows or has reason to know the victim suffers from a mental condition which renders him incapable of understanding the nature or consequences of the act.

I stated earlier that the state relied on the transference phenomenon that exists in a therapist-patient relationship as the mental condition that rendered victim incapable of understanding. What does this term mean?

Based on expert testimony in this case, literature in the mental health field, and limited case law, "transference," as relates to the therapist-patient relationship, is the emotional reaction which the patient in therapy has toward the therapist. The patient unconsciously attributes to the therapist those feelings which he may have suppressed toward others close to him, such as parents. It is through the skillful management of the feelings that the therapist as-

sists the patient in becoming well. *See generally Simmons v. United States*, 805 F.2d 1363 (9th Cir.1986); *L.L. v. Medical Protective Co.*, 122 Wis.2d 455, 461, 362 N.W.2d 174, 177 (Ct.App.1984); Coleman, *Sex Between Psychiatrist and Former Patient: A Proposal For A "No Harm, No Foul" Rule*, 41 Okla.L.Rev. 1 (1988); W. Masters & V. Johnson, *Principles of the New Sex Therapy*, Am.J.Psychiatry 133:5 (1976). The therapist can readily tell when transference has occurred. "Inappropriate emotions, both hostile and loving, directed toward the [therapist] are recognized as constituting ... the transference." *L.L. v. Medical Protective Co.*, 122 Wis.2d at 461, 362 N.W.2d at 177 (quoting M. Heller, *Some Comments to Lawyers on the Practice of Psychiatry*, 30 Temp.L.Q. 401, 401–02 (1957)). The development of the transference may be marked by signs that the patient identifies with the therapist, i.e., the patient learns to think, style, and model himself after the therapist. *Id.* 122 Wis.2d at 461, 362 N.W.2d at 177 (quoting from D. Dawidoff, *The Malpractice of Psychiatrists* 6 (1973)). Dr. Martin Orne, a psychiatrist-psychologist who testified for the state, recited an example of this emulation when he observed a patient of his change his brand of cigarettes to an offbeat foreign brand used by Dr. Orne. In the case before us, victim's acquiring a Fiat automobile similar to the one driven by defendant was recognized as a sign that transference was occurring in the therapeutic relationship.

Sex between the therapist and his patient, whether it be heterosexual or homosexual, resulting from the transference phenomenon, has been the subject of much debate in the mental health area and has spawned civil litigation for malpractice, *e.g., Simmons v. United States; Vigilant Insurance Co. v. Employers Insurance of Wausau*, 626 F.Supp. 262 (S.D.N.Y.1986); *L.L. v. Medical Protective Co.; see also* W. Masters & V. Johnson, *supra;* Stone, *The Legal Implications of Sexual Activity Between Psychiatrist & Patient*, Am.J.Psychiatry 133:10 (1976).

Based on my own research, I found only one reported case in which a psychiatrist was convicted for statutory rape of his patient, *see People v. Bernstein*, 171 Cal. App.2d 279, 340 P.2d 299 (1959); however, that case did not address the issue of whether sex between the therapist and his patient met the statutory requirements; it dealt with evidentiary questions. This issue is squarely before us and must be answered.

The narrower issue is whether the statutory language in question should be construed strictly so as to limit CSP to those situations where the perpetrator sexually penetrates a mentally impaired individual who is incapable of ever knowing what has occurred, or, should construction be expanded to permit the facts and circumstances of the case before us. I am compelled to hold for the strict construction. I explain why.

The rules of statutory construction mandate that penal statutes be strictly construed and be of sufficient certainty so that a person will know that his act is criminal when he commits the act. *State v. Collins*, 80 N.M. 499, 458 P.2d 225 (1969); *State v. Grijalva*, 85 N.M. 127, 509 P.2d 894 (Ct. App.1973). The rationale for the rule of strict construction is that statutes which do not give reasonable notice of what conduct is proscribed are void for vagueness under the Due Process Clause of the United States Constitution. In *State v. Brecheisen*, 101 N.M. 38, 42, 677 P.2d 1074, 1078 (Ct.App.1984) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)), we said that the United States Supreme Court has described the void-for-vagueness doctrine as requiring " 'that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *See also State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990). While the statute as written is not being challenged as void for vagueness, the argument is made that an expansive interpretation as advocated by the state would lead to that result. I agree.

If the mental condition requirement can be satisfied by transference, how will ordinary people understand what conduct is prohibited, and how can arbitrary and discriminatory enforcement be avoided or discouraged? We know from the state's experts that transference occurs in relationships outside the therapeutic context. For example, Dr. Carl Adams, a psychologist called by the state, acknowledged that transference can occur between parent and child, teacher and student, coach and athlete, and so on. When asked how he would distinguish sexual penetration in those settings from the therapist-patient context, Dr. Orne said the difference is intensity. He said that transference can be so intense in therapy that the patient will not be able to withhold consent. Accepting this as correct, then do we limit prosecution to the more intense relationship while turning away from prosecuting the less intense one, and where does one draw the line? In law enforcement, this encourages arbitrary and discriminatory enforcement.

The Model Penal Code of the American Law Institute (A.L.I.) adopts a standard similar to Section 30–9–10(A). It punishes intercourse where the perpetrator "knew that [the victim] suffers from a mental disease or defect which renders [the victim] incapable of appraising the nature of [the victim's] conduct." A.L.I. Model Penal Code and Commentaries, § 213.1 at 322 (1980). According to the commentary, this language was intended to constrict the reach to instances of severe mental incapacity. It adds that "[b]y specifying that the [victim] must lack ability to assess the 'nature' of [the victim's] conduct, the statute is intended to avoid questions of value judgment and of remote consequences of immoderate acts." *Id.* The A.L.I. indicates that this standard has been adopted by a number of jurisdictions and, in footnote 132, lists New Mexico among those. It should be noted, however, that the statute identified is NMSA 1953, Section 40A–9–20(A)(4), predecessor to Section 30–9–10(A)(4), with which we are concerned in this case. However, in comparing the earlier version with the version applicable to this case, it appears that only "mental disease," as found in the earlier code, has been changed to "mental condition" in the newer version. Although arguably that change might be construed as intending to broaden the mental state of the victim, in my opinion it does not broaden it to the reach necessary to accommodate the state's theory in this case.

It is also interesting to note that the A.L.I., in commenting on the Michigan code, had this to say:

Moreover, some cases covered by the Michigan law are more closely akin to breach of professional responsibility than to the law of rape. Thus, for example, a psychiatrist may take advantage of a well-known dependency phenomenon to persuade a patient who is already enamored of him to engage in intercourse. No doubt such behavior is reprehensible, and it should certainly raise the issue of his fitness to practice medicine. But it is far from clear that seduction of this sort should be subject to criminal sanctions....

A.L.I. Model Penal Code and Commentaries § 213.1 at 332.

In sum, I would hold that the theory upon which the state prosecuted defendant does not state a crime for CSP II or CSP III under the statute as currently worded. This is not to say that the legislature, if it chooses to do so, could not enact legislation to cover the situation presented by this case. In fact, Minnesota has done so. *See* Minn.Stat. § 609.345(1)(j) (a person who engages in sexual contact with another is guilty of criminal sexual conduct if the actor is a psychotherapist and the complainant is a patient or former patient and the sexual contact occurred by means of therapeutic deception. Consent by the complainant is not a defense). It is equally clear that the reprehensible conduct of defendant may well be subject to other sanctions or remedies: loss of license to practice, civil liability for damages for malpractice, and criminal fraud. *See generally* Coleman, *supra*, 41 Okla.L.Rev. 1, 21 n. 119; *see also Don Moran v. People*, 25 Mich. 356 (1872) (where physician fraudulently represented to patient that carnal

connection was part of medical treatment, but judiciary could not strain existing criminal law to bring such cases within it).

Even if it could be said that the state's theory comes within the purview of the statute, the evidence presented, considered in the light most favorable to the state, would not support a conviction. The state's experts testified that victim, although aware of the nature of the act, did not understand its consequences. According to Dr. Adams, the psychologist called by the state, victim would not have understood that he would suffer at a later date from post-traumatic stress disorder resulting from one or more of these episodes with defendant. The question is, does this meet the proof necessary under the statutory language? I would hold that it does not.

That victim knew what was happening is not in question. He testified that "I allowed it to happen." Although the state offered proof that on occasion defendant placed victim under hypnosis, it does not appear to be the state's theory that victim was forced by reason of hypnosis to do something against his will. The purpose of this evidence, as I understand it through the testimony of Dr. Orne, was to simply show that hypnosis facilitated the act perpetrated by defendant, but that the real cause was the transference phenomenon.

With the state relying upon victim's inability to understand the consequences of the act, the question is, does a later-suffered emotional disorder satisfy the requirement? In *People v. Easley*, 42 N.Y.2d 50, 396 N.Y.S.2d 635, 364 N.E.2d 1328 (1977), the court said that an understanding of coitus encompasses more than a knowledge of its physiological nature. It said that an appreciation of how it will be regarded in the framework of the societal environment and taboos to which the person will be exposed may be far more important. In other words, whether there is an awareness of the social or other costs of one's conduct is a legitimate area of inquiry in determining whether one is so mentally defective that the protective shield of the penal law is invoked. Here,

victim testified that, while he did not understand the "full spectrum" of what homosexuality entailed, he said he was uncomfortable and thought it was wrong.

There are many consequences that flow from intercourse, be it heterosexual or homosexual. In the heterosexual context, pregnancy, in either context, venereal disease. While these possible consequences of course must be considered by responsible sexual partners, be they male-and-male or male-and-female, the proper inquiry when discussing the ability to understand the nature or consequences of the act presents something different. In my view, in talking about the mental condition of the victim and his or her ability to understand, the proper inquiry should be more immediate and focus on that person's ability to make a moral judgment as to whether he or she should allow this to be done.

We said in *State v. Jimenez*, 89 N.M. 652, 556 P.2d 60 (Ct.App.1976), that absence of consent is not an element of the crime as defined by the legislature. In that case, the defendant argued that absence of consent on the part of the victim was an inherently necessary element of the offense. Of course, if the victim is capable of understanding the nature or consequences of the act, then the factfinder never reaches the question of consent because there is no crime of rape. Thus, absence of consent would apply only where the victim is capable of understanding. If the victim is incapable of understanding, then you never reach the question of absence of consent.

The significance of *Jimenez* is that it makes clear that in order for there to be CSP II or III under the sections charged, the victim must be so mentally impaired as to be unable to understand the nature or consequences of the act. This does not contemplate, in my opinion, an awareness, as was true in this case, of the act, but a lack of appreciation of some future consequences. To allow such testimony to support a conviction would change the meaning of the statute. Additionally, it would permit a partner to sex to change it from consensual to CSP, as was the case here,

by claiming later that such partner was unaware that the act would have an emotional effect on him or her. The same could be said of venereal disease or pregnancy.

The evidence shows victim left therapy in 1983 and did not return until 1987. According to Dr. Adams, victim had some reservations "because ... he knew what was going to happen." The state charged defendant with eight counts of CSP for 1987. How can it be said that victim suffered from a mental condition which rendered him incapable of understanding the nature or consequences of the acts that occurred when, by his own admission, he knew what was going to happen? Surely, this is not rape.

For the reasons above, I concur in reversal with directions to dismiss the CSP counts.