Filed 9/13/23  P. v. Carmona CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANCISCO GONZALEZ CARMONA,<br><br>    Defendant and Appellant. | D079779<br><br><br>(Super. Ct. No. SCE392322) |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

Francisco Gonzalez Carmona was convicted and sentenced on charges that he engaged in lewd and lascivious acts with and upon two children, and

sexually penetrated one of them. He contends the trial court erred: first, by admitting in evidence out-of-court statements of alleged victims *other* than the two to whom the charges pertained; and second, by sentencing Carmona to an upper term of imprisonment without having specified any circumstances in aggravation to justify the upper term. As to the first assignment of error, we conclude Carmona forfeited his right to challenge the out-of-court statements because his counsel did not object, move to strike, or request a limiting instruction with regard to the statements at trial. As to the second assignment of error, we conclude that resentencing is required in order to comply with sentencing-law amendments that took effect shortly after the trial court imposed its sentence. Hence we affirm the conviction, vacate the sentence, and remand the matter for resentencing.

## I.

### Factual and Procedural Background

In 2021, the district attorney charged Carmona with offenses based on allegations that he had sexually penetrated one of his granddaughters (the first granddaughter) when she was below the age of 11, that he had engaged in lewd and lascivious acts with and upon that same granddaughter at a time when she was below the age of 14, and that he had engaged in lewd and lascivious acts decades earlier with and upon one of his nieces (the niece) when she, too, was below the age of 14.[1]

---

1    The offenses alleged were: one count of violation of Penal Code section 288.7, subdivision (b) (sexual penetration of a child 10 years of age or younger by a person 18 years of age or older) with respect to the first granddaughter; two counts of violation of Penal Code section 288, subdivision (a) (commission of a lewd or lascivious act upon or with a child under 14 years of age) also with respect to the first granddaughter; and 13 counts of violation of the same provision (§ 288, subd. (a)) with respect to the niece.

2

A.    The Evidence Presented at Trial

At trial, the prosecution presented testimony from the first granddaughter and the niece; as well as a second granddaughter and one of Carmona's daughters (the daughter).  As discussed in somewhat more detail *post,* each of these witnesses testified that, when she was a child, she had been touched inappropriately by Carmona and told by Carmona not to tell others.

The first granddaughter (who was the subject of counts 1 through 3) was 15 years old when she took the witness stand.  She testified:  that, commencing when she was seven years old and continuing until a time when she was 12 years old, Carmona had used his fingers, at times over her clothes and at other times under her clothes, to touch (or rub) the outside and, over time, the inside of her vagina on "many, many" ("more than 30") occasions, and also to touch her breasts on occasion during this same period; that this touching had occurred in the bedroom of a family member's home in the United States and in the garden, living room, garage, and a bedroom (Carmona's bedroom) of Carmona's home in Mexico; that she often "would wake up to his touching"; that the touching sometimes hurt ("[a] seven" "on a scale from one to ten with ten being the most force"); and that Carmona told her not to tell anyone.

The niece (who was the subject of counts 4 through 16) was an adult with children of her own when she took the stand.  She testified:  that on many occasions, beginning when she was seven years old or younger and continuing until she was 13 or 14 years old, her uncle (Carmona) would insert two or three fingers into her vagina; that, every time he touched her vagina, he would simultaneously touch her breasts; that this touching had occurred in a bedroom of Carmona's home in the United States and in a bedroom of

3

Carmona's home in Mexico; that the touching was always inside her underwear and under her shirt; that this touching occurred approximately two to three times a month, when she was between 11 years old and 13 or 14 years old; that "[h]e would pull . . . down her [underwear and shorts] to put his hand in"; that the touching hurt; that the touching would begin while she was asleep and she would wake up to it; and that he told her "not tell anyone because they wouldn't believe [her]" and that "it would be his word against [hers]."

The second granddaughter—who was ten years old when she took the stand—testified: that, on several occasions commencing when she was five years old and continuing until a time when she was six years old, Carmona had used his hand, at times over her clothes and at other times over her underwear, to touch her vagina, her chest, and "[t]he back part where we go to the bathroom number two"; that this touching had occurred in her bedroom at her home in Mexico and in Carmona's bedroom in *his* home in Mexico; that, on one occasion in which Carmona touched her in this fashion, "he locked the door to the bedroom [with just the two of them inside] and [she] got very scared"; that on another occasion she "woke up to grandpa . . . touching [her]"; that the touching hurt; that on multiple occasions Carmona told her not to tell anyone; and that on at least one occasion he told her "that[,] if I told anyone, he was going to take revenge."

The daughter—who was an adult with grown children of her own when she took the stand—testified: that, for a period of time during her early teen years and possibly earlier, Carmona used to use his hand and at least one finger to touch her vagina "like probably a couple times a month"; that "[s]ometimes it would be the outside of her vagina" and "sometimes it would be the inside"; that "it hurt" when he touched the inside of her vagina; that

4

he also used to touch her breasts during this period of time; that some of the touching occurred in a van and some of it occurred in a trailer; that she "told him to stop . . . every time" he touched her vagina and that "sometimes he would [stop]" in response to her telling him to stop and that "sometimes he wouldn't"; that he used to tell her "[a]ll the time" not to say anything to her mother; and that, when she finally reported the conduct, she was removed to a series of group homes where she lived until she was 18 years old.

The prosecution also presented testimony from 12 additional witnesses, including five members of the Carmona family, three law enforcement personnel, three social workers experienced in conducting forensic interviews of children in situations involving allegations of child abuse, and a pediatrician employed by Rady Children's Hospital who specializes in child abuse. The pediatrician testified that both granddaughters had tested positive for a sexually transmitted infection (STI) and that, "in [a child] this age . . . who is not reporting consensual sexual activity," such a test result "is definitive for [there having been] some type of sexual contact."[2]

In addition, the prosecution presented out-of-court statements made by each of the two granddaughters, the daughter, and the niece. The out-of-court statements of the granddaughters were introduced through video-and-audio recordings of forensic interviews of the granddaughters by one of the

---

[2] The pediatrician testified that, when asked, the first granddaughter indicated that she had not been involved in any type of sexual contact apart from the touching by Carmona. The record does not reveal whether the same type of inquiry was posed to the second grandchild (who was below the age of ten when the consultation with the pediatrician occurred). The pediatrician also testified that the types of sexual contact through which an STI can be transmitted include "when the offender's secretions are on his or her hand and then gets placed into the genitalia of a child," and that an STI can be transmitted "in the same way[] if there is contact with infectious secretions to the mucus membranes of the anus."

social worker witnesses (the forensic examiner), accompanied by transcripts of the interviews and testimony from the forensic examiner and a detective. The daughter's out-of-court statements were introduced via testimony from two witnesses. One of these two witnesses was a retired sheriff's deputy who recounted an occasion in 1991, some 30 years earlier, when he had responded to a radio call relating to a report of a family disturbance and the daughter, aged 15, had told him that her father (Carmona) had been touching her vagina and her breasts frequently over the course of the preceding two years. The second of the two witnesses through whom the daughter's out-of-court statements were introduced was another one of the social worker witnesses (the CPS social worker), now retired, who also had become involved following the family disturbance in 1991. The niece's out-of-court statements were introduced via testimony from a detective.

The defense presented no witnesses.

B. Proceedings Related to the Use at Trial of the Challenged Out-of-Court Statements

1. The Defense's Pre-trial Objections to the Challenged Out-of-Court Statements Being Used at Trial

The use of the out-of-court statements at trial was not the first indication that the prosecution intended to use the out-of-court statements of the second grandchild and the daughter (the challenged out-of-court statements) to establish guilt. At a pre-trial hearing the day before opening statements, the court heard in limine arguments addressed to this very topic. During the pre-trial hearing, the defense interposed objections to such use,

citing Evidence Code section 352[3] as the basis for the objections. The court provisionally overruled these objections.

With respect to the out-of-court statements of the second granddaughter, defense counsel stated:

> "I would just submit on—just on 352, that if we get too into the weeds and building up and putting context and putting specifics to these prior statements when we are going to hear from [the second granddaughter and the daughter] directly, that we might be wasting time and that really becomes cumulative."

In response, the court stated: "I will be sensitive . . . to any arguments that some of the statements were cumulative, but at least initially I will rule that those statements are admissible at this time."

Similarly, with respect to the out-of-court statements of the daughter, defense counsel stated:

> "I think, once again, once we get more into the weeds of these . . . accusations and . . . allegations [by the daughter], it's going to only expand the—what we need to examine with each and every witness.
>
> [¶] . . . [¶]
>
> "[I]t's going to open up a whole other bag of issues. So I think that's our concern is it's just going to send us in all these different directions when we are just trying to stay focused on whether or not the allegations as posed by [the first granddaughter and the niece] are true."

---

3      Evidence Code section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In response, the court stated: "The Court will allow limited disclosure of [such evidence] subject to any further objections by [defense counsel], as far as being cumulative or 352 material."

The arguments predicated on Evidence Code section 352 were the only arguments defense counsel advanced as a basis for its objections.

2.    The Absence of Any Objections at Trial to Use of the Challenged Out-of-Court Statements

During its case in chief, the prosecution played the video recording of the forensic interview of the second granddaughter for the jury, distributed the transcript of that interview to the jury, examined the forensic examiner about the interview,[4] elicited from the retired sheriff's deputy his account of what the daughter had told him during his encounter with her following the family disturbance in 1991, and elicited from the CPS social worker her account of what the daughter had told *her* during the CPS agency's follow-up response in 1991—all without defense counsel renewing his pre-trial Evidence Code section 352 objections to the challenged out-of-court statements or interposing any other objection or request for a limiting instruction, with respect to the use of such evidence.

Before resting its case, the prosecution moved to admit in evidence several trial exhibits, including the recordings of the forensic interviews of the two granddaughters. The trial court asked defense counsel: "Any objection to those . . . ? Defense counsel replied: "No."

---

4    The prosecution also played for the jury the video recording of the forensic interview of the first granddaughter (which is not being challenged on appeal). In addition, it distributed the transcript of that interview to the jury, and examined the forensic examiner about that interview.

8

## C. Verdicts and Sentencing

Following closing arguments, the jury convicted Carmona on each of the charges, comprising 16 counts in all. With regard to the first granddaughter, the jury returned verdicts finding Carmona guilty on one count of the crime of sexual penetration with a child 10 years old or younger, in violation of Penal Code section 288.7, subdivision (b), and on two counts of the crime of lewd act upon a child, in violation of Penal Code section 288, subdivision (a). With regard to the niece, the jury returned verdicts finding Carmona guilty on 13 counts of the crime of lewd act upon a child, in violation of section 288, subdivision (a).

The jury also made a further pair of findings (one under a section of the Penal Code relating to eligibility for probation,[5] and the other under what is commonly known as the one-strike rule[6]) on each of the two counts as to which it found that Carmona had committed a lewd act upon the first granddaughter. It was not asked to make findings as to any circumstances in aggravation; nor did Carmona stipulate to any such circumstances.

Some weeks later, the trial court pronounced a sentence as to each count, resulting in the imposition of an aggregate term of imprisonment

---

[5] "[W]e further find the allegation that [Carmona] did have substantial sexual conduct with [the first granddaughter], a child under fourteen years of age, in the commission of the above described felony of Lewd Act On A Child, within the meaning of Penal Code section 1203.066[, subdivision] (a)(8), to be True."

[6] "[W]e further find the allegation that [Carmona] has been convicted in [this case] of committing an offense specified in subdivision (c) against more than one victim, within the meaning of Penal Code section 667.61[, subdivisions] (b)[,] (c) [&] (e) to be True."

9

totaling 30 years to life plus an additional 32 years.[7] As to one of the counts—count 4, for violation of Penal Code section 288, subdivision (a)—the court sentenced Carmona to imprisonment for the upper term of eight years. In sentencing Carmona to the upper term on this offense, the court did not specify any of the statutory "circumstances in aggravation" enumerated in California Rules of Court, rule 4.421.

Instead, the court stated:

> "Count [4], the court did look at that. Considered the longevity of the offenses, considered the circumstances of the offense in this particular case. Under rule 4.421(a), the court has considered the individual rules under that rule, and does find that the upper term is appropriate in this case; the upper term of eight years . . . ."

Thereafter, referring to all 16 counts, the court adverted to one of the statutory circumstances in *mitigation* that are enumerated in California Rules of Court, rule 4.423, stating: "The court is mindful of the defendant's lack of convictions." (See Cal. Rules of Court, rule 4.423(b)(1).) "But," the court continued, "the lives that Mr. Carmona has impacted over decades deserve[] these sentences in this case."

This was the extent of the trial court's articulation of its rationale for imposing the upper term.

---

7    The 30 years to life is comprised of 15 years to life on count 1 plus an additional 15 years to life on count 3, and the additional 32 years is comprised of eight years on count four plus two years each on counts five through 16, with all terms to be served consecutively. The court did not impose a term of imprisonment on count 2 because it concluded "punishment under this [count] is barred by Penal Code [section] 654."

II.

Discussion

As noted *ante,* Carmona contends the trial court erred in two respects: first, by admitting in evidence the challenged out-of-court statements (i.e., the out-of-court statements of the second granddaughter and the daughter); and second, by sentencing him to the upper term of imprisonment without specifying any circumstances in aggravation to justify the upper term. We examine each of these contentions in turn.

A.    Admission of the Challenged Out-of-Court Statements

    1.    The Absence of an Objection at the Time of Trial

In support of his contention that the trial court erred in admitting the challenged out-of-court statements in evidence, Carmona argues that the court incorrectly applied Evidence Code section 1360[8] and the fresh

---

8    Evidence Code section 1360 articulates circumstances under which, "[i]n a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule." (Evid. Code § 1360(a).) Carmona contends that this provision applies only to statements by alleged victims to whom the charges pertain, and not to other alleged victims; however, for reasons stated in this opinion, we do not find it necessary to address this contention.

complaint doctrine.[9]  But these arguments do not help Carmona, because he did not assert section 1360 or the fresh complaint doctrine as a basis for any objection, motion in limine, motion to strike, or request for limiting instruction at the time of trial.

In this regard, Evidence Code section 353, subdivision (a) forecloses reversal of a judgment based on erroneous admission of evidence absent an objection or motion to strike that was timely made on grounds that are the same as those being advanced on appeal.  (Evid. Code § 353, subd. (a)] ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless . . . [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"].)  The grounds that Carmona advanced in support of the objections he expressed during the pre-trial hearing (Evid. Code § 352) did not include the grounds he is advancing now.  And, in *People v. Demetrulias* (2006) 39 Cal.4th 1 (*Demetrulias*), our Supreme Court has stated:

> "Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a motion to strike it was 'timely made and so stated as to make clear the specific ground of the objection.'  Pursuant to this

---

9      The fresh complaint doctrine is a mechanism that "allows evidence to be admitted for the limited purpose of showing that a complaint was made by the victim, and not for the truth of the matter stated." (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522 (*Ramirez*) [citing *People v. Brown* (1994) 8 Cal.4th 746, 761].)  "Evidence admitted pursuant to this doctrine may be considered by the trier of fact for the purpose of corroborating the victim's testimony, but not to prove the occurrence of the crime."  (*Ramirez*, at p. 1522 [citing *People v. Bernstein* (1959) 171 Cal.App.2d 279, 285].)  For reasons stated in this opinion, we do not find it necessary to address this contention.

statute, ' "we have consistently held that the 'defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable." ' [Citation.] Under this principle, defendant's claim that . . . admission of [the] evidence [challenged on appeal] violated [the] Evidence Code . . . is not cognizable; defendant forfeited his claim by failing to make timely objections or a timely motion to strike on that specific ground."

(*Demetrulias, supra,* at pp. 20–21 [concluding defendant that had forfeited his claim under Evid. Code § 1103, that evidence of victims' peaceful character was inadmissible].)

Moreover, even if the objections that Carmona made during the pre-trial hearing, and that the court provisionally overruled, had included the two bases that he is advancing now (Evid. Code § 1360 and the fresh complaint doctrine), such inclusion would not suffice to spare Carmona from the consequences of his not having timely and specifically reiterated those bases for objecting at the time of trial.

"Neither of these bases of relevance was raised or discussed in the hearing on . . . motion[s] in limine, nor did defendant take advantage of the trial court's offer to reconsider its in limine ruling at any point during trial. A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself."

(*People v. Holloway* (2004) 33 Cal.4th 96, 133.) Indeed, far from asserting at (*or* before) trial the bases for inadmissibility that he is advancing now, Carmona instead did the opposite—by acquiescing to the prosecution's motion to admit in evidence the recording of the forensic interview of the second granddaughter.

13

2.    The Ineffective Assistance of Counsel Argument

Acknowledging the problem posed by the fact that his trial counsel did not assert at trial the grounds for an evidentiary challenge that his appellate counsel now advocates, Carmona asserts that—to the extent that the absence of such a challenge at trial has resulted in a forfeiture—he received ineffective assistance of counsel at his trial.  To support this assertion, Carmona asserts that the video of the forensic interview of the second granddaughter was cumulative and especially prejudicial because it depicted the second granddaughter at the age of eight (two years younger than the age at which she testified at trial) "play[ing] with play dough," "dr[awing] in coloring books," and "talk[ing] in [a] childlike way."

To establish ineffective assistance of counsel, a defendant must establish "that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms" and "that, absent [the claimed] error [by counsel], it is reasonably probable that the verdict would have been more favorable to [the defendant]." (*People v. Hawkins* (1995) 10 Cal.4th 920, 940.)  "If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)

Here, the record sheds no light as to why Carmona's trial counsel did not object or request a limiting instruction with respect to the challenged out-of-court statements or as to whether an explanation for not objecting was sought or received from trial counsel.  However, on the record presented here, we need not speculate as to why he acted or failed to act as he did, nor need we consider whether any of various explanations on which we might

14

speculate should be deemed satisfactory or unsatisfactory, because we conclude it is not reasonably probable that the verdict would have been more favorable to Carmona had the challenged out-of-court statements not been used. Regardless of any conclusions the jury might have drawn from the challenged out-of-court statements, the fact remains that jurors observed four witnesses (representing two generations of the Carmona family) testify under oath to having repeatedly endured pain, discomfort, and feelings of helplessness as children due to numerous instances of molestation at the hand of their grandfather/father/uncle over multiple periods of time spanning decades. In addition, jurors heard testimony generally supportive of the alleged victims' accounts from 12 more witnesses. No family member or any other witness testified on behalf of Carmona. These circumstances—with or without the challenged out-of-court statements—furnished the jury a more than sufficiently powerful basis on which to return verdicts of guilty on all counts.

For the reasons stated, we decline Carmona's invitation to reverse his conviction on evidentiary grounds. Ineffective assistance of counsel has not been established. If it had been established, it would be harmless. (See *People v. Doolin* (2009) 45 Cal.4th 390, 439 ["even if we were to assume evidentiary error, any error would be harmless" as "[t]here was overwhelming evidence of defendant's guilt"]; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Hence, in our view " '[N]o reason appears why we should not apply the established rule[] . . . that issues not raised in the trial court cannot be raised for the first time on appeal.' " (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)

15

B.     Sentencing

Turning to the topic of Carmona's sentence, we begin by noting that the discretion accorded to trial judges in sentencing is much more circumscribed today than it was on the date that the trial judge imposed sentence on Carmona (November 29, 2021).  (See generally *People v. Lopez* (2022) 78 Cal.App.5th 459, 464–465 (*Lopez*) [discussing amendments to sentencing laws occasioned by enactment of Sen. Bill No. 567].)  Whereas Penal Code section 1170, subdivision (b), in effect on November 29, 2021 provided that:

> "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."

Penal Code section 1170, subdivision (b)(1), effective as of January 1, 2022 provides that:

> "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."

As the parties have acknowledged, this change applies retroactively to all cases that were not yet final as of January 1, 2022.  (See *Lopez, supra,* 78 Cal.App.5th at p. 465; see also *People v. Conley* (2016) 63 Cal.4th 646, 656 ["new laws that reduce the punishment for a crime are presumptively to be applied to defendants whose judgments are not yet final"].)  Of course, the existence of this appeal means that this case is not yet final.  Hence, as to each count, Carmona's sentence may not "exceed the middle term, except as otherwise provided in paragraph 2" of section 1170, subdivision (b).  (Pen. Code, § 1170(b)(1).)

Paragraph 2 of section 1170, subdivision (b) provides that, in a jury trial:

> "The court may impose a sentence exceeding the middle term *only* when [1] there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and [2] the facts underlying those circumstances [a] have been stipulated to by the defendant, or [b] have been found true beyond a reasonable doubt at trial by the jury."

(Pen. Code, § 1170, subd. (b)(2) (italics added).)

Here, Carmona did not stipulate to, and the jury did not find, any circumstances in aggravation, and the trial court did not articulate any such circumstances in imposing sentence; yet the court imposed the upper (rather than the middle) term as to count 4. In other words, the trial court did not apply section 1170, subdivision (b) *as amended* (the new version of the sentencing law). Thus we must determine whether prejudice resulted from the fact that the trial court did not apply the new version of the sentencing law. (See *Lopez, supra,* 78 Cal.App.5th at pp. 465–467; *Watson, supra,* 46 Cal.2d at p. 836.)

In evaluating prejudice arising from a trial court's having not applied Penal Code section 1170, subdivision (b) as amended, the courts of appeal have adopted a variety of different methodologies[10] that our Supreme Court,

---

10      See, e.g., *People v. Flores* (2022) 75 Cal.App.5th 495, 500–501; *Lopez, supra*, 78 Cal.App.5th at pp. 465–466; *People v. Wandrey* (2022) 80 Cal.App.5th 962, 981-982, review granted Sept. 28, 2022, S275942; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1110–1111; *People v. Dunn* (2022) 81 Cal.App.5th 394, 405, review granted Oct. 12, 2022, S275655 (*Dunn*); *People v. Flowers* (2022) 81 Cal.App.5th 680, 686, review granted Oct. 12, 2022, S276237; *People v. Lewis* (2023) 88 Cal.App.5th 1125, review granted May 17, 2023, S279147; *People v. Falcon* (2023) 92 Cal.App.5th 911, 918–921, 923–952 (*Falcon*) [discussing various courts' approaches].

"[h]aving granted review in *People v. Lynch* (May 27, 2022, C094174) (nonpub. opn.), review granted August 10, 2022, S274942, . . . is now poised to resolve." (See *Falcon, supra,* 92 Cal.App.5th at p. 920.) Pending Supreme Court resolution of this split, we will continue to apply the two-part test that *this* court articulated in *Lopez, supra*:

> "[U]nder the new version of the triad system set forth in section 1170, the initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt all of *the aggravating factors <u>on which the trial court relied</u>* in exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is 'no,' we then consider the second question, which is whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836 . . . , that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of *the factors <u>on which it previously relied</u>*. If the answer to both of these questions is 'no,' then it is clear that remand to the trial court for resentencing is necessary."

(*Lopez, supra,* 78 Cal.App.5th at p. 468, fn. 11 (original italics deleted and additional italics and underlining added); see *id.* at pp. 465–468.)

As can be seen in the language to which we have added italics, in order for a reviewing court to apply the *Lopez* methodology, the trial court must have specified in the record "all of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term." Yet, in this case, the trial court did not specify in the record any of the aggravating

factors on which it relied. Instead, it merely stated that it had "[c]onsidered the longevity of the offenses, considered the circumstances of the offense . . . , [and] considered the individual rules under . . . rule [4.421, subdivision (a)," and "f[ou]nd that the upper term is appropriate"—without specifying the conclusions (if any) it had drawn from those circumstances or those rules that prompted it to "find . . . the upper term . . . appropriate." Thus we conclude that resentencing is necessary to ensure that Carmona's sentence complies with section 1170, subdivision (b) in its current iteration. Further, pursuant to the full resentencing rule (see *People v. Buycks* (2018) 5 Cal.5th 857, 893), that the trial court must reconsider the entire sentence—not just the sentence as to count 4.

III.

Disposition

The conviction is affirmed, the sentence is vacated, and the matter is remanded to the trial court for resentencing consistent with this opinion. Following resentencing, the trial court shall prepare an amended abstract of judgment and forward a copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.

19