**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-098**

**Filing Date: July 15, 2011**

**Docket No.  28,898**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**DOMINIC L. EBERT, JR.,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

## OPINION

**BUSTAMANTE, Judge.**

**{1}**     After the district court denied his motion to dismiss, Defendant Dominic L. Ebert entered a conditional guilty plea to one count of child solicitation by computer, contrary to NMSA 1978, Section 30-37-3.2 (2005) (amended 2007).  Defendant argued below and argues here that Section 30-37-3.2 is unconstitutionally vague and overbroad, and that it violates the Commerce Clause.  We disagree and affirm.

1

## I.    FACTUAL BACKGROUND

**{2}**    Our understanding of the facts in this case comes from Defendant's brief in support of his motion to dismiss, which sets forth the following facts.  Agent Carrie McPherson, a member of the New Mexico State Police Online Predator Unit, initiated an e-mail conversation with Defendant.  In this conversation, Agent McPherson pretended to be a twelve-year-old child named "Chrissy."  Defendant initially advised "Chrissy" that she should not talk to strangers.  The exchanges continued, eventually leading to graphic sexual discussions via e-mail and instant messaging.

**{3}**    Defendant explained what he believed to be the basis for the count to which he pleaded guilty.  Defendant began sharing sexual fantasies with "Chrissy."  On March 29, 2007, Defendant asked "Chrissy" to touch her clitoris.  The conversation progressed until Defendant asked "Chrissy" to touch herself while taking a bath and to make herself orgasm.  Defendant characterized his behavior as "request[ing] that 'Chrissy' touch herself" and as "communicat[ing] a wish that an adult police officer, pretending to be a minor child, masturbate."

## II.    DISCUSSION

**{4}**    Defendant argues that the statute under which he was convicted is unconstitutional for three reasons:  (1) because it criminalizes speech that is protected under the First Amendment, (2) because it is unconstitutionally vague, and (3) because it regulates speech and conduct across multiple states.  Our standard of review is de novo.  *See ACLU of N.M. v. City of Albuquerque*, 2006-NMCA-078, ¶ 10, 139 N.M. 761, 137 P.3d 1215.

### A.    First Amendment - Overbreadth

**{5}**    Defendant argues that Section 30-37-3.2 violates the First Amendment because it criminalizes speech that is otherwise legal, "particularly because the law as written does not distinguish between lawful and unlawful conduct."  In response, the  State points to numerous state and federal decisions that have upheld similar laws under a strict scrutiny analysis by relying on the idea that speech used to further the sexual exploitation of children is not constitutionally protected.

**{6}**    "[A] statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008).  Statutes enjoy a strong presumption of constitutionality, and the burden is on the challenger to prove a statute unconstitutional beyond a reasonable doubt. *See State v. Laguna*, 1999-NMCA-152, ¶ 24, 128 N.M. 345, 992 P.2d 896.  Although a constitutional challenge is ordinarily limited to the facts of the case, a defendant may make an overbreadth challenge based on the First Amendment even if the statute is constitutional as applied to him. *See State v. Luckie*, 120 N.M. 274, 276, 901 P.2d 205, 207 (Ct. App. 1995); *see also New York v. Ferber*, 458 U.S. 747, 767-69 (1982).

2

**1.      Section 30-37-3.2 Is Not Facially Overbroad**

**{7}**     We begin our analysis with the issue of whether the speech prohibited by Section 30-37-3.2, soliciting children to engage in sexual conduct, is protected under the First Amendment.  At the time Defendant was charged, Section 30-37-3.2(A) provided:

> Child solicitation by computer consists of a person knowingly and intentionally soliciting a child under sixteen years of age, by means of computer, to engage in sexual intercourse, sexual contact or in a sexual or obscene performance, or to engage in any other sexual conduct when the perpetrator is at least three years older than the child.

The statute also provided that "child solicitation by computer is committed in this state if a computer transmission either originates or is received in this state."  Section 30-37-3.2(C).

**{8}**     We assume without deciding that because Section 30-37-3.2 targets communications based on their sexual content, it is a content-based prohibition. *See, e.g.*, *Turner Broad. Sys., Inc., v. FCC*, 512 U.S. 622, 643 (1994) ("As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content[-]based."); *People v. Foley*, 731 N.E.2d 123, 131 (N.Y. 2000) (concluding that a similar statute was content-based because it targeted sexually explicit communication).  Accordingly, it is subject to strict scrutiny and must be narrowly tailored to serve a compelling interest. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

**{9}**     In *Ferber*, the United States Supreme Court examined a First Amendment challenge to a law prohibiting the promotion of any performance known to include sexual conduct by a child under the age of sixteen.  458 U.S. at 751.  The owner of a bookstore specializing in sexually oriented products was convicted under the contested statute for selling films depicting young boys masturbating. *Id.* at 751-52.  The question in *Ferber* was whether, in order to "prevent the abuse of children who are made to engage in sexual conduct for commercial purposes," the statute could "prohibit the dissemination of material which shows children engaged in sexual conduct, *regardless of whether such material is obscene*." 458 U.S. at 753 (emphasis added) (internal quotation marks omitted).  The Court had previously held that obscene speech was not protected under the First Amendment. *See id.* at 754 (citing *Roth v. United States*, 354 U.S. 476, 485 (1957)).

**{10}**    Although the Court did not identify a specific level of scrutiny, it appeared to acknowledge that singling out child pornography was a content-based restriction. *See id.* at 763-64.  The Court observed that it was "evident beyond the need for elaboration that a [s]tate's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'" *Id.* at 756-57 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)).  Furthermore, it declared that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 757.

3

Balancing the effect of the law on the welfare of children against the de minimis value of the speech, the Court upheld the law. *Id.* at 762-64.

**{11}** More recently, the Court emphasized that it is the protection of children—not a general condemnation of material containing child pornography—that is a state's compelling interest. In *Ashcroft v. Free Speech Coalition*, the Court struck down a federal statute prohibiting the possession or distribution of sexually explicit images that appeared to display minors regardless of whether they were produced using real children. 535 U.S. 234, 239, 256 (2002). Providing examples such as Romeo and Juliet (where Juliet was only thirteen years old) and virtual porn (where pornographic images are generated by computer), the Court characterized the law as "prohibit[ing] speech that records no crime and creates no victims." *Id.* at 247, 250. It reiterated the holding of *Ferber*, observing that "*Ferber*'s judgment about child pornography was based upon how it was made, not on what it communicated." *Ashcroft*, 535 U.S. at 250-51.

**{12}** In light of the above, and as a matter of common wisdom, it is beyond question that the State has a compelling interest in protecting children from sexual predators and sexual exploitation. *See, e.g.*, *Ferber*, 458 U.S. at 756-57; *People v. Hsu*, 99 Cal. Rptr. 2d 184, 190 (Ct. App. 2000); *Foley*, 731 N.E.2d at 132; *State v. Tarbay*, 157 Ohio App. 3d 261, 2004-Ohio-2721, 810 N.E.2d 979, at ¶¶ 9-10.

**{13}** Recognizing that compelling interest, the inquiry then turns to whether Section 30-37-3.2 is narrowly tailored to the interest it is intended to serve. We hold that it is. Tailoring is primarily accomplished through the "knowingly" scienter requirement, which ensures that communications are criminalized only when knowingly made to a child under the age of sixteen. *See State v. Robins*, 2002 WI 65, ¶ 40, 253 Wis. 2d 298, 646 N.W.2d 287 (noting that prohibitions on sexual communications are overbroad when they do not require the speakers to know they are communicating to children); *see also United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (holding that a similar federal statute was not overbroad because it only applied to those who knowingly persuaded or enticed minors). Furthermore, the statute does not restrict adults from communicating about sex to children, nor does it restrict adults from soliciting sex from one another over the internet. In fact, the statute prohibits only that conduct necessary to achieve the State's interest. *See, e.g.*, *United States v. Meek*, 366 F.3d 705, 721-22 (9th Cir. 2004) (noting the significance, under a very similar federal statute, of the mens rea requirement).

**{14}** Because Section 30-37-3.2 is narrowly tailored to the compelling interest of protecting children from online sexual predators, it is not unconstitutional under the First Amendment. But, Defendant suggests that the statute is overbroad because it might, for example, prevent clergy or Planned Parenthood from "advising [teenagers] to engage in abstinence and use masturbation as a means of relieving sexual frustration." We do not believe that advising—in the contexts suggested—is the same as soliciting. *See Williams*, 553 U.S. at 298-99 (distinguishing abstract advocacy from solicitation). Nonetheless, even assuming that Defendant's example was criminalized by the statute, this single example does

4

not show that the statute prohibits a substantial amount of free speech. *See id.* at 303 ("The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)); *Ferber*, 458 U.S. at 752-53, 773 (concluding that statute prohibiting distribution of books known to contain depictions of sexual performances of children was not overbroad despite its possible inclusion of medical textbooks or National Geographic magazines). Should such a case arise, future defendants could properly argue that Section 30-37-3.2 is unconstitutional as applied to them. *See Ferber*, 458 U.S. at 773-74.

### 2.    An Unlawful Element Is Not Necessary

**{15}**    Relying on *State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990), and *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991), Defendant argues that the statute is overbroad because it is not limited by the phrase "unlawful." We disagree.

**{16}**    In *Pierce*, a defendant argued that the criminal sexual contact of a minor (CSCM) statute was overbroad unless a specific intent element was read into it. 110 N.M. at 80, 792 P.2d at 412. The CSCM statute prohibited unlawful, intentional touching of the intimate parts of a minor. *Id.* The defendant argued that, without requiring the specific intent that the touching be for sexual gratification, the statute would criminalize legal behavior such as ordinary parental child care. *Id.* Our Supreme Court disagreed, observing that the statute prohibited only *unlawful* conduct. *Id.* Our cases have defined unlawful as "without legal justification or excuse." *Id.* at 80, 792 P.2d at 412. In the context of assault, we have noted the importance of "unlawful" as a qualifier because "[t]here are many strikings which are not unlawful." *Territory v. Miera*, 1 N.M. 387, 388 (1866). Because the statute only prohibited touchings without justification or excuse, the Court concluded that the statute did not include the activities that the defendant argued rendered it overbroad. *Id.*

**{17}**    The Court again examined meaning of the "unlawful" element in the CSCM statutes one year after *Pierce*. In *Osborne*, a man was convicted of CSCM for touching the buttocks of his girlfriend's seven-year-old daughter while he hugged her. 111 N.M. at 655, 808 P.2d at 625. In dispute was whether the term "unlawful" was an element of the crime or a defense. *Id.* The Court "found no indication of express legislative intent as to whether unlawfulness was meant to be treated as an element of the offense or its opposite as a defense." *Id.* at 658, 808 P.2d at 628. Looking at both the practical consequences and the use of "unlawful" in the uniform jury instructions, the Court concluded that "unlawfulness" was an element that the prosecution was required to prove. *See id.* at 658-60, 808 P.2d at 628-30.

**{18}**    We agree that the explicit inclusion of an "unlawful" element could only improve Section 30-37-3.2. However, we do not believe that the failure to include "unlawful" renders the statute unconstitutionally overbroad. *Pierce* instructs us that inclusion of "unlawful" would limit the breadth of the statute to avoid the hypotheticals propounded by Defendant

5

in this case. *Pierce* does not say that statutes without an "unlawful" element are necessarily overbroad. *Osborne* provides guidance on whether "unlawful" is an element or defense when it is present in a statute. As we have noted above, this concern is adequately addressed by the ability of future defendants to argue that the statute is unconstitutional as applied.

**B.      Due Process - Vagueness**

**{19}**    Defendant argues that Section 30-37-3.2 is unconstitutionally vague. In particular, he asserts that the statute is vague "because the statutory language lacks a requirement that the communication serving the basis for [the] charge is unlawful communication." Additionally, Defendant contends that the definition of sexual conduct "was not particularly defined to indicate what conduct was prohibited."

**{20}**    Under the Due Process Clause of the United States Constitution, vagueness can render a statute unconstitutional. *See State v. Leiding*, 112 N.M. 143, 148, 812 P.2d 797, 802 (Ct. App. 1991) (Bivins, J., specially concurring). A statute is unconstitutionally vague if it does not "allow individuals of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited." *Laguna*, 1999-NMCA-152, ¶ 25. Vagueness also exists when "the statute permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages . . . *ad hoc* application." *Id.* ¶ 26. A statute enjoys a strong presumption of constitutionality, and the burden is on Defendant to prove it unconstitutional beyond a reasonable doubt. *Id.* ¶ 24. "Because the essence of a vagueness claim rests on a lack of notice, a party may not succeed on the claim if the statute clearly applies to the defendant's conduct." *State v. Duran*, 1998-NMCA-153, ¶ 31, 126 N.M. 60, 966 P.2d 768, *abrogated on other grounds*, *Laguna*, 1999-NMCA-152, ¶ 23.

**{21}**    The statute in this case clearly applies to Defendant's conduct. Section 30-37-3.2 prohibits knowingly soliciting by computer a child under sixteen to engage in sexual conduct. There is no dispute that Defendant believed he was communicating electronically with a twelve-year-old girl. But Defendant also cannot contend that he did not solicit sexual conduct. Chapter 37 defines sexual conduct to include, among other acts, an "act of masturbation." *See* NMSA 1978, § 30-37-1(C) (1973). Defendant characterizes his own behavior as a request that "Chrissy" masturbate. Under the plain meaning of the terms "solicit" and "masturbation," Defendant's version of the facts supports a conclusion that Defendant solicited "Chrissy" to masturbate. Because the statute clearly applies to the facts of this case, Defendant may not argue that the statute was unconstitutionally vague.

**C.      Commerce Clause**

**{22}**    Defendant's final argument is that Section 30-37-3.2 violates the Commerce Clause of the United States Constitution by regulating speech across multiple states. The State responds that Defendant has not shown that the statute imposes an excessive burden on

interstate commerce. The State also cites to numerous out-of-state cases that have concluded that soliciting children to perform sex acts is not legitimate interstate commerce.

**{23}**   "In what has become known as the 'negative' or 'dormant' Commerce Clause jurisprudence, the Commerce Clause has been interpreted as implicitly 'prohibit[ing] certain state actions that interfere with interstate commerce.'" *Kmart Props., Inc. v. N.M. Taxation & Revenue Dep't*, 2006-NMCA-026, ¶ 18, 139 N.M. 177, 131 P.3d 27 (alteration in original) (quoting *Quill Corp. v. N.D. ex rel. Heitkamp*, 504 U.S. 298, 309 (1992)), *reversed on other grounds sub nom. Kmart Corp. v. N.M. Taxation & Revenue Corp.*, 2006-NMSC-006, 139 N.M. 172, 131 P.3d 22. To determine whether a statute impermissibly burdens interstate commerce, we apply the following balancing test:

> Where [a] statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*N.M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n*, 111 N.M. 622, 628, 808 P.2d 592, 598 (1991) (alteration in original) (quoting *Ark. Elec. Coop Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 393-94 (1983)).

**{24}**   Because the statute applies "evenhandedly" to both in-state and out-of-state actors, we balance its burden on interstate commerce against its local purpose. We have already discussed the importance of the State's interest in preventing the sexual exploitation of children. As have the other states to address this issue, we now hold that Section 30-37-3.2 imposes no burden on legitimate interstate commerce. *See Hsu*, 99 Cal. Rptr. 2d at 190 ("[I]t is difficult to conceive of any legitimate commerce that would be burdened by penalizing the transmission of harmful sexual material to known minors in order to seduce them."); *Simmons v. State*, 944 So. 2d 317, 334 (Fla. 2006) ("[T]here is no legitimate interstate commerce interest in communicating with . . . minors for the purpose of luring them into sexual activity."); *Foley*, 731 N.E.2d at 133 ("We are hard pressed to ascertain any legitimate commerce that is derived from the intentional transmission of sexually graphic images to minors for the purpose of luring them into sexual activity."). In addition, the statute addresses only the behavior relevant to its local purpose and thus could not be drafted in a less restrictive way.

**{25}**   Avoiding the balancing test, Defendant argues that, according to *American Libraries Association v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997), Section 30-37-3.2 violates the Commerce Clause. Defendant's reliance on *Pataki* is misplaced. In *Pataki*, the plaintiffs sought to enjoin the New York Attorney General from enforcing a statute that prohibited

7

individuals from:

> Knowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors, [to] intentionally use[ ] any computer communication system allowing the input, output, examination or transfer, of computer data or computer programs from one computer to another, to initiate or engage in such communication with a person who is a minor.

969 F. Supp. (alterations in original). The court concluded that the statute violated the Commerce Clause for three reasons: (1) because it criminalized conduct that occurred entirely outside of New York, (2) because the burdens on interstate commerce outweighed the local benefits, and (3) because the internet "must be marked off as a national preserve to protect users from inconsistent legislation" that might limit its growth. *Id.* at 169, 173-81.

{26} *Pataki* is easily distinguished. First, Section 30-37-3.2 only applies to communications that originated or were received in New Mexico. *See* § 30-37-3.2(C). Second, as we discussed above, the New Mexico statute survives the balancing test because it burdens no legitimate commerce. Because we do not consider soliciting children to perform sex acts to be legitimate conduct, we find *Pataki*'s third rationale inapposite. Furthermore, unlike the law in *Pataki*, Section 30-37-3.2 contains mens rea components that require a defendant to know he is soliciting acts from a child. Finally, Section 30-37-3.2 also prohibits only a narrow area of unprotected speech, compared to the law in *Pataki*, which included a significant amount of indecent, but protected speech.

## III.    CONCLUSION

{27}    For the foregoing reasons, we affirm the district court's judgment and remand for further proceedings consistent with this Opinion.

{28}    **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**

Topic Index for *State v. Ebert*, No. 28,898

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CC | Commerce Clause |
| CT-DP | Due Process |
| CT-FS | Freedom of Speech |
| CT-VO | Vague or Overbroad |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-SE | Sexual Exploitation of Children |
| CL-SX | Sexual Offences |
| CL-SL | Solicitation |
| | |
| **ST** | **STATUTES** |
| ST-VA | Vagueness |