SUTIN, Judge (specially concurring). {35} I concur in the overbreadth, vagueness, and general/specific dispositions and do not write separately to discuss aspects of those dispositions. I concur, as well, in the as-applied disposition, but write separately only to express my view that the CDM statute, as applied here, should be analyzed under strict scrutiny and not intermediate scrutiny. I do so not only because I see the CDM statute as content-based under the circumstances here. I also do so because I see the CDM statute as a statute that can all too easily give rise to prosecutorial overreach and to outlier jury verdicts. See State v. Butt, 2012 UT 34, ¶ 32, __P.3d__(“However, the fact that the jury must measure patent offensiveness against contemporary community standards does not mean . . . that juror discretion in this area is to go unchecked.” (omission in original) (alteration, internal quotation marks, and citation omitted). {36} Initially, I do not see a purpose in attempting to distinguish or separate the writing at issue, its delivery, and its effect, in analyzing the constitutional issues. Here, the charge against Defendant arose out of the writing and delivery of a letter encouraging criminal or immoral sexual activity, conduct no different than a face-to-face verbal encouragement consisting of the same content. Effect is built into the statutory element. Thus, I see no need to attempt any distinction or separation in justifying Defendant’s conviction under the CDM statute. {37} The problematic language of the CDM statute with which I have concern here is that which criminalizes acts that tend to encourage or encourage a minor to act in a way that is injurious to his or her health, morals, or welfare. Under New Mexico case law, children are to be protected in instances in which another’s speech or act can result in a child engaging in conduct not tolerated by a community under the community’s sense of decency, propriety, or morality, and the fact finder is to be the determiner of whether the conduct is or is not to be tolerated under a community standard. See Trevino, 116 N.M. at 531, 865 P.2d at 1175 (stating that, under the CDM statute, “[w]e always have relied on juries to determine what acts constitute contributing to delinquency in a particular case” including “[t]he common sense of the community, as well as the sense of decency, the propriety, and the morality which most people entertain” (internal quotation marks and citation omitted)); Barr, 1999-NMCA-081, ¶ 17 (“The purpose of the CDM statute is to protect children from harmful adult conduct.” (internal quotation marks and citation omitted)); Fawcett, 114 N.M. at 546-47, 843 P.2d at 848-49 (discussing jury instructions allowing the jury to convict the defendant for speech unacceptable or beyond decency under community “tolerance” standard and indicating that the issue is a jury issue). By my special concurrence here, I hope to at least lay the foundation for the careful and strict scrutiny I believe should be required in cases such as this. {38} The constitutional question under discussion “concerns the validity of the statute[] as applied to the specific facts of [this] case[].” Bartnicki, 532 U.S. at 524. The issue is whether the CDM statute is content-neutral or content-based. Deciding whether a particular regulation is contentbased or content neutral is not always a simple task . . . . As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based. In determining whether a regulation is content based or content neutral, we look to the purpose behind the regulation; typically, government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech. Id. at 526 (omission in original) (alteration, emphasis, internal quotation marks, and citations omitted). “[T]he mere assertion of a content-neutral purpose [is not] enough to save a law which, on its face, discriminates based on content.” Turner Broad. Sys., Inc., 512 U.S. at 642-43. {39} The basic purpose of that part of the CDM statute applicable here is to regulate the encouragement[1] of a minor to commit an offense or engage in conduct injurious to the minor’s health, morals, or welfare. Included in that basic purpose, of course, is the intent to protect minors. See Barr, 1999-NMCA-081, ¶ 17; see also Ebert, 2011-NMCA-098, ¶ 12 (stating that “it is beyond question that the State has a compelling interest in protecting children from sexual predators and sexual exploitation”); Brown, 131 S. Ct. at 2736 (“No doubt a [s]tate possesses legitimate power to protect children from harm[.]”). Still, “[mjinors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them.” Brown, 131 S. Ct. at 2735 (internal quotation marks and citation omitted). {40} The CDM statute can unquestionably regulate speech when it criminalizes encouragement of conduct. The speech it regulates includes protected speech. That speech is protected which does not fall within the categories of unprotected speech such as obscenity, child pornography, defamation, fraud, incitement, fighting words and speech integral to criminal conduct. See id. at 2733 (setting out limited areas of unprotected speech); United States v. Stevens, 599 U.S. 460, _, _, 130 S. Ct. 1577, 1584, 1586 (2010) (same). {41} While the CDM statute does not specifically and expressly regulate encouragement of minors to engage in sexual offenses or unacceptable sexual activities, in the balance, I view the CDM statute as content-based insofar as it specifically criminalizes the encouragement of minors to act in a way that is injurious to their morals. To proscribe encouragement to engage in conduct considered immoral under community standards is tantamount to proscribing encouragement to engage in immoral sexual conduct. The proscription obviously includes engaging in sexual activity considered impermissible or intolerable under “the morality which most people entertain” in a community. Trevino, 116 N.M. at 531, 865 P.2d at 1175 (describing the community standard as “[t]he common sense of the community, as well as the sense of decency, the propriety, and the morality which most people entertain” (internal quotation marks and citation omitted)); Fawcett, 114 N.M. at 546, 843 P.2d at 848 (“We believe [Article II, Section 17 of] our constitution requires that, although the community might not find the materials ‘acceptable,’ it must find them ‘intolerable’ before they may be deemed as an ‘abuse’ of the right to freely speak, write, and publish sentiments on all subjects.”). Thus, as it applies to the facts of this case, I would label the CDM statute as content-based, requiring strict scrutiny. See City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 434, 455 (2002) (stating that content-based regulation of speech must pass strict scrutiny); City of Albuquerque v. Pangaea Cinema LLC, 2012-NMCA-075, ¶ 29, 284 P.3d 1090 (same), cert. granted, 2012-NMCERT-007, 295 P.3d 600. {42} Under strict scrutiny, a regulation is invalid “unless it is justified by a compelling government interest and is narrowly drawn to serve that interest.” Brown, 131 S. Ct. at 2738; see also Pangaea Cinema, 2012-NMCA-075, ¶ 29 (stating that under strict scrutiny, the government must “show that it has a compelling interest in the challenged scheme and that it has accomplished its goals by employing the least restrictive means”). The CDM statute as applied to the facts in this case passes strict scrutiny muster. I do not doubt that New Mexico has a compelling interest in protecting minors from harm when adults encourage minors to engage in injurious, immoral, intolerable sexual conduct. Cf. Ferber, 458 U.S. at 756-57 (stating that “the [sjtates are entitled to greater leeway in the regulation of pornographic depictions of children},]” that “}t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance},]” and that “}i]t is evident beyond the need for elaboration that a [sjtate’s interest in safeguarding the physical and psychological well-being of a minor is compelling” (internal quotation marks and citation omitted)); Butt, 2012 UT 34, ¶ 35 (“Because of the [sjtate’s exigent interest in preventing distribution to children of objectionable material, it can exercise its power to protect the health, safety, welfare},] and morals of its community by barring the distribution to children of books recognized to be suitable for adults.” (internal quotation marks and citation omitted)). {43} Nor do I doubt that the CDM statute need not have greater restrictive tailoring than exists in regard to that protection when it comes to adult encouragement of minors to engage in immoral, injurious, intolerable, sexual conduct. See Alameda Books, 535 U.S. at 455 (“A restriction based on content survives only on a showing of necessity to serve a legitimate and compelling governmental interest, combined with least restrictive narrow tailoring to serve it}.]”); Ebert, 2011-NMCA-098, ¶ 14 (holding a statute proscribing unlawful solicitation of children to be narrowly tailored, under strict scrutiny, to a compelling interest of protecting children from online sexual predators). JONATHAN B. SUTIN, Judge By “encourage” or “encouragement” in this Concurring Opinion, I mean to include both “tend to encourage” and “encourage.”