This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37944**

**STATE OF NEW MEXICO,**

>      Plaintiff-Appellee,

v.

**JOHNATHAN LUJAN-SIERRA,**

>      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}**      Defendant Johnathon Lujan-Sierra was convicted of child solicitation by electronic communication device (child solicitation), and appearing for a meeting with a child under thirteen years of age, contrary to NMSA 1978, Section 30-37-3.2(A) and (C)(2) (2007); contributing to the delinquency of a minor, contrary to NMSA 1978, Section 30-6-3 (1990); and distribution of marijuana to a minor, contrary to NMSA 1978, Section 30-31-21(A)(1) (1987). On appeal, Defendant contends that (1) the district court committed fundamental error by omitting the required element of Defendant's

knowledge that Victim (L.G.[1]) was under sixteen years of age from the jury instruction for child solicitation; (2) the district court erred by sentencing Defendant to sex-offender parole, NMSA 1978, § 31-21-10.1 (2007); and (3) the district court erred by enhancing Defendant's sentence pursuant to the habitual offender statute, NMSA 1978, § 31-18-17 (2003), based on Defendant's Arizona felony conviction for conduct Defendant committed as a minor. We reverse Defendant's sentencing to sex-offender parole but otherwise affirm.

## BACKGROUND

**{2}**     Given that the parties are familiar with the facts and details of this case, this Court only briefly set forth pertinent facts and applicable law in this memorandum opinion, reserving further discussion of specific facts where necessary to our analysis. *See* Rule 12-405(B) NMRA (providing that appellate courts "may dispose of a case by non-precedential order, decision or memorandum opinion" under certain circumstances).

**{3}**     The following evidence was presented at trial. In January 2015, L.G. met Defendant while walking in her neighborhood. Defendant was twenty-two years old at the time, but told L.G. that he was eighteen years old. L.G. was twelve years old at the time, and testified that she told Defendant her age, but when asked if she had told Defendant she was twelve years old, she testified that she could not remember. L.G. gave Defendant her cell phone number and began exchanging text messages with Defendant, who identified himself in the text messages as "[J]ohnathon," clarifying that he was the Johnathon "from down the street" who "just got" L.G.'s number.

**{4}**     In his text messages, Defendant repeatedly attempted to convince L.G. to come to his house to "chill," and to "smoke." Defendant asked L.G. to come to see him alone and told her "you can't tell no one [sic] but [I] like [you.]" Defendant asked L.G. multiple times if she would kiss him and repeatedly requested "cutie" and "sexy" pictures of her. Ultimately, L.G. agreed to send Defendant a picture on Snapchat, where pictures and messages disappear shortly after being opened by the recipient. The two exchanged Snapchat user names; Defendant told L.G. that his Snapchat user name was T-Mobile17. Text messages show that Defendant offered to send L.G. a picture of his penis. L.G. subsequently received a picture of a penis on Snapchat. The explicit pictures L.G. received on Snapchat did not show the sender's face.

**{5}**     Eventually, L.G. went to Defendant's house; when she arrived, Defendant was smoking marijuana, which he offered to L.G., and she declined. Defendant kissed L.G. in what she described as an "aggressive" and "forceful manner" that she did not want. L.G. left Defendant's house and told a friend about the incident, which led to L.G.'s

---

1Although the child victim's name was used at trial, we refer to her by initials. *See State v. Samora*, 2016-NMSC-031, ¶ 3 n.1, 387 P.3d 230 (noting that although a child victim's name was used at trial, use of initials on appeal respects the victim's dignity and privacy).

mother learning of the incident and a police investigation. During her Safehouse interview, L.G. disclosed that in addition to kissing her, Defendant touched her vulva.

**{6}** L.G. identified Defendant as the perpetrator of the above-described conduct in a police interview. During the investigation, police learned that Defendant had a medical marijuana card, that Defendant worked at T-Mobile, and that the phone number used to send text messages to L.G. was registered to Defendant's grandmother. Police also learned that Defendant lived in his grandmother's home, which was located in L.G.'s neighborhood.

**{7}** Detective Jones spoke with Defendant, who denied knowing L.G. and stated that he would not bring a girl to his grandmother's house. Before Defendant was told that the case involved explicit pictures, Defendant told Detective Jones that he does not send explicit pictures. Defendant told Detective Jones that he paid for multiple phone lines registered to his family members, and although the phone number that L.G. exchanged messages with was registered to Defendant's grandmother, Defendant stated that his grandmother did not have a cell phone and had no use for one. Defendant denied having a Snapchat account and told Detective Jones that in the past, his family members had posed as Defendant on social media to "get with girls." Defendant specifically implicated his cousin, Adam Garcia, as the person potentially responsible for the crimes against L.G.

**{8}** Detective Jones interviewed Adam Garcia, a minor at the time, with his parents present. Adam initially told the police that he met L.G. while posing as Defendant on Snapchat and that when he met with L.G. in person, he smoked marijuana resin with her, kissed her, and "grabbed her butt." Based on inconsistencies in Adam's statements, Detective Jones believed that Adam was being "deceptive[.]" Later in the interview, Adam changed his story and admitted to Detective Jones that Defendant had contacted him, told him police would be in touch, and asked him to confess to kissing L.G., smoking resin with her, and grabbing her butt.

**{9}** At trial, Adam testified that he made up the story to "cover" for Defendant because he was scared for his cousin. Adam admitted to communicating with L.G. through Snapchat on a tablet at Defendant's grandmother's home but denied texting with L.G., sending her explicit pictures, or meeting with her in person. Defendant presented no evidence at trial.

**{10}** Defendant was initially charged with criminal sexual contact of a minor (CSCM) for touching L.G.'s vulva, based on L.G.'s disclosures in her Safehouse interview. At trial, L.G. testified that Defendant put her hand on his penis, and did not testify that Defendant touched her vulva. The district court denied the State's motion to amend the indictment to charge Defendant with CSCM for putting L.G.'s hand on his penis, instead directing a verdict for Defendant as to the charge.

**{11}** The jury found Defendant guilty of child solicitation, appearing for a meeting with a child under thirteen years of age; contributing to the delinquency of a minor; and

distribution of marijuana to a minor. The jury acquitted Defendant of criminal sexual communication with a child, the charge based on the explicit pictures sent to L.G. on Snapchat, the messaging platform that Adam Garcia admitted to having used to communicate with L.G. while posing as Defendant.

**{12}** The district court originally sentenced Defendant to a term of ten years for all charges, eight years of which were suspended, for a total sentence of two years of incarceration followed by five years of probation and two years of parole. This sentence included a habitual offender enhancement, pursuant to Section 31-18-17, for Defendant's 2009 felony conviction, when he was a minor, for attempted armed robbery in Arizona. Less than thirty days after the entry of the judgment (but after Defendant filed his notice of appeal), the district court filed an amended judgment and sentence, altering Defendant's parole term from two years to "an indeterminate period of parole between five (5) years and twenty (20) years."[2]

## DISCUSSION

### I. The Jury Instruction for Child Solicitation Did Not Constitute Fundamental Error Because the Omitted Element Was Not at Issue

**{13}** Defendant contends that the district court committed fundamental error by omitting the required element of Defendant's knowledge of L.G.'s age from the jury instruction for child solicitation. "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal citation omitted). Because Defendant did not object to the jury instructions at trial, we review for fundamental error.

**{14}** "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. "Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal

---

2As in the original sentence, the amended sentence suspended eight years of Defendant's incarceration and ordered five years of probation. Separately, the amended sentence included five to twenty years of parole. However, the amended parole sentence cited to the sex offender probation statute, NMSA 1978, § 31-20-5.2 (2003), rather than the sex offender parole statute, § 31-21-10.1. The Probation and Parole Act defines probation as a defendant's release by the court "under a suspended or deferred sentence[,]" whereas parole is the release "of an inmate of an institution by decision of the board or by operation of law subject to conditions imposed by the board and to its supervision[.]" NMSA 1978, § 31-21-5(A)-(B) (1991). While Defendant presents arguments on the inapplicability of both the sex offender probation and parole statutes, the State presents no arguments regarding the applicability of the sex offender probation statute and instead only presents arguments on the applicability of the sex offender parole statute. Therefore, for the purpose of our analysis, we assume that in the amended sentence, the district court imposed a parole sentence as stated in the text of the amended sentence, despite citing to the sex offender probation statute.

quotation marks and citation omitted). We exercise our power to review "guardedly," finding fundamental error only when a "mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Barber*, 2004-NMSC-019, ¶¶ 8, 17 (internal quotation marks and citations omitted).

**{15}** "The general rule is that fundamental error occurs when the trial court fails to instruct the jury on an essential element." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72. "However, fundamental error does not occur if the jury was not instructed on an element not at issue in the case. Likewise, when there can be no dispute that the omitted element was established, fundamental error has not occurred and reversal of the conviction is not required." *Id.* (internal citation omitted).

**{16}** Child solicitation consists of a person "knowingly and intentionally soliciting a child under sixteen years of age, by means of an electronic communication device, to engage in . . . sexual conduct when the perpetrator is at least four years older than the child." Section 30-37-3.2(A). The "knowingly" scienter element of the child solicitation statute criminalizes these communications "only when knowingly made to a child under the age of sixteen." *State v. Ebert*, 2011-NMCA-098, ¶ 13, 150 N.M. 576, 263 P.3d 918. Defendant was convicted under Section 30-37-3.2(A) and (C)(2) for "knowingly and intentionally soliciting a child under sixteen years of age, by means of an electronic communication device, to engage in . . . sexual conduct" and appearing at a meeting with a child under thirteen  years of age. The jury instruction required the jury only to find that L.G. was "under [thirteen] years of age," and did not require a finding that Defendant had the requisite knowledge that L.G. was under sixteen years of age.

**{17}** Because the district court failed to instruct the jury on this essential element, we review the entire record in order to place this erroneous instruction in the context of the specific facts of the case to determine whether Defendant's conviction represents a plain miscarriage of justice. *See Sutphin*, 2007-NMSC-045, ¶ 19 (stating that under the fundamental error analysis, an erroneous jury instruction results in full record review for a miscarriage of justice).

**{18}** L.G. was twelve years old when she met Defendant, and when asked at trial if she told Defendant "how old" she was, L.G. answered "yes." Although L.G. could not remember if she specifically told Defendant that she was twelve years old, we note that L.G.'s memory lapse arose during her more generalized confusion at the March 2018 trial regarding her age in January and February 2015 when the incidents with Defendant occurred.

**{19}** Throughout trial, Defendant put forth the theory that Adam Garcia, not Defendant, committed the charged acts, and argued to the jury that Adam recanted his initial confession only after being "threatened" with the fact that he had confessed to multiple felonies against a twelve-year-old. Defense counsel argued to the jury that Defendant was "the only person that [sic] gave one consistent story in this case," and "never deviated" from his claims that he did not know anything about the incidents with L.G.

**{20}** L.G.'s credibility, and not her age, was central to the defense in this case. Defense counsel argued to the jury that L.G. was not a credible witness, emphasizing the changing details in L.G.'s account of where Defendant touched her and arguing that L.G. did not "remember exactly what happened . . . because none of it happened." Defense counsel additionally challenged L.G.'s identification of Defendant, noting that she provided specific identifying details about Defendant's chest tattoo only after she was shown a photograph of Defendant in which his chest tattoo was visible. When the jury convicted Defendant of child solicitation, appearing for a meeting with a child under age thirteen, the jury necessarily found L.G.'s testimony credible and rejected the defense theory that it was Adam Garcia, rather than Defendant, who communicated with and assaulted L.G.

**{21}** Simply put, Defendant's knowledge of L.G.'s age was not at issue in this case.[3] Because it is not fundamental error to omit an element not at issue in a case, *see Sutphin*, 2007-NMSC-045, ¶ 16, and because Defendant's knowledge of L.G.'s age was not at issue, we conclude that no fundamental error resulted from the omission of the scienter element from the jury instruction for child solicitation.

**{22}** To the extent that Defendant attempts to recharacterize the evidence presented at trial to imply that his knowledge of L.G.'s age was at issue, we remain unpersuaded. First, Defendant argues that his knowledge of L.G.'s age was at issue because of L.G.'s allegedly "mature activities," citing to her text messages that reference smoking marijuana, participating in cheerleading, and being in after-school detention. While Defendant certainly could have argued to the jury that these texts raised an inference of a mature age, no such argument was made. Notably, any argument that these messages created a mistaken belief about L.G.'s age would have been wholly incompatible with Defendant's claims that he did not know L.G. and never met with her. Second, Defendant argues that his knowledge of L.G.'s age was at issue at trial because Adam Garcia testified that L.G. told him she was sixteen years old. However, we fail to see how Adam Garcia's alleged mistaken belief regarding L.G.'s age is relevant to the issue of Defendant's knowledge of L.G.'s age. Additionally, we note that Defendant failed to offer the jury any arguments about the significance of Adam Garcia's mistaken belief regarding L.G.'s age as it might pertain to his own knowledge of L.G.'s age.

**{23}** Finally, Defendant argues that because the child solicitation statute was not meant to punish those who "unknowingly or accidentally" communicate with a child under sixteen years of age, omission of the scienter element caused the jury to convict

---

3Under the Dissent's approach, nearly any instructional error regarding an element of an offense is reversible, despite a lack of objection, based on wholly new theories of the facts of the case presented on appeal. Besides requiring that precedent be overruled, see Sutphin, 2007-NMSC-045, ¶ 16 ("[F]undamental error does not occur if the jury was not instructed on an element not at issue in the case."), we are concerned that such an approach encourages litigating issues on appeal that a defendant fails to litigate at trial. The Dissent's approach would allow Defendant to garner reversal on appeal without demonstrating the "miscarriage of justice," Barber, 2004-NMSC-019, ¶ 8, "circumstances that shock the conscience," or "fundamental unfairness" Cunningham, 2000-NMSC-009, ¶ 21, that fundamental error requires (internal quotation marks and citation omitted).

beyond the intent of the statute. While we recognize the importance of the scienter element in maintaining the constitutionality of the child solicitation statute, *see Ebert*, 2011-NMCA-098, ¶¶ 7, 8, 13 (noting that constitutional tailoring of the child solicitation statute is "primarily accomplished through the 'knowingly' scienter requirement"), omission of a necessary element does not amount to fundamental error if the missing element was "not at issue in the case." *Sutphin*, 2007-NMSC-045, ¶ 16. Here, Defendant's knowledge of L.G.'s age was simply not contested at trial. Because the element was not at issue in the district court, it cannot become one for the first time on appeal. We hold that omission of the scienter element from the jury instruction was not fundamental error.

## II.      The District Court Erred by Sentencing Defendant to Sex Offender Parole

**{24}** Defendant contends that his amended parole sentence amounts to an illegal sentence because he is not a sex offender as defined by the sex offender parole statute. Specifically, Defendant argues that the competing 2007 amendments from Senate Bill (SB) 735 and SB 528 to the sex offender parole statute are irreconcilable, rendering ineffective the earlier SB 735 amendment to include child solicitation in the sex offender parole statute. Defendant asserts that because the SB 735 amendment adding child solicitation to the sex offender parole statute was ineffective, the district court erred by sentencing Defendant to an indeterminate parole period of five to twenty years, in accordance with the terms of the sex offender parole statute. *See* § 31-21-10.1(A)(1).

**{25}** We recently addressed this same issue in *State v. Sena*, 2021-NMCA___, ¶ 1, ___P.3d___ (No. A-1-CA-38071, Feb. 4, 2021). In *Sena*, we reversed the district court's order sentencing a defendant to sex offender parole after pleading guilty to child solicitation. *Id.* To reach this conclusion, we analyzed "(1) two bills . . . enacted [during] the 2007 legislative session that both amended the sex offender parole statute and the list of registrable sex offenses under SORNA; (2) the compilation history of these statutes; and (3) our previous interpretation of conflicting portions of these 2007 bills in *State v. Ho*, 2014-NMCA-038, 321 P.3d 147." *Sena*, 2021-NMCA-___, ¶ 2. In relevant part, the "competing [2007] amendments to the sex offender parole statute made multiple amendments addressing the interrelated issues of who is subject to sex offender parole and what such a sentence requires." *Id.* ¶ 25. Specifically, "SB 735 added child solicitation to the sex offender parole statute without consideration of enhanced parole terms such as GPS monitoring, and likewise, GPS monitoring was added as a term of sex offender parole without consideration of whether that term should apply to the crime of child solicitation." *Sena*, 2021-NMCA-___, ¶ 31. Facing ambiguity regarding our Legislature's intention stemming from the interrelated nature of the amendments, the unique compilation history of the amendments, and our decision in *Ho*, we applied the rule of lenity and resolved the ambiguity in favor of the defendant, holding that a conviction for child solicitation is not subject to sex offender parole. *Sena*, 2021-NMCA-___, ¶¶ 31, 33.

**{26}** Based on our reasoning in *Sena*, we reach the same conclusion in this case and hold that the district court erred by sentencing Defendant in accordance with the terms of the sex offender parole statute, § 31-21-10.1(A)(1), rather than under the applicable general parole statute, NMSA 1978, § 31-21-10(D) (2009).

**{27}** Additionally, Defendant argues that the district court lacked jurisdiction to modify his original sentence following his notice of appeal and that imposition of sex offender parole in this case would violate due process because the sex offender parole statute was not compiled to include child solicitation in the language of the statute itself at the time of Defendant's offense. In light of our holding that Defendant is not subject to a sentence to sex offender parole for his conviction of child solicitation, we decline to address these remaining arguments. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 (observing that "courts exercise judicial restraint by deciding cases on the narrowest possible grounds and avoid reaching unnecessary constitutional issues").

### III. Defendant's Sentence Was Properly Enhanced Under the Habitual Offender Statute

**{28}** The district court enhanced Defendant's sentence by one year under the habitual offender statute, § 31-18-17, based on his 2009 Arizona felony conviction for attempted armed robbery. Although Defendant was a minor at the time of the attempted armed robbery, Defendant was charged and sentenced as an adult under Arizona law, Ariz. Rev. Stat. Ann. § 13-501(A)(4) (2008, amended 2015). Defendant argues that the district court erred by enhancing his sentence in the instant case based on his Arizona felony conviction because under Arizona law, his charge of attempted armed robbery automatically resulted in an adult sentence, whereas under New Mexico law, he would have received additional procedural protections. The State argues that Defendant's sentence was properly enhanced because neither the habitual offender statute nor our case law contain an exception for felony convictions where a juvenile is automatically sentenced as an adult.

**{29}** Under the habitual offender statute, the sentence for a person with a "prior felony conviction" must be increased by one additional year. Section 31-18-17(A). A prior felony conviction is a conviction, in New Mexico or another jurisdiction of the United States, in which the sentence was completed within ten years of the instant felony conviction. Section 31-18-17(D). Sentence enhancement based on an out-of-state felony conviction requires in relevant part that:

> (a)    the conviction was rendered by a court of another state . . .;
>
> (b)    the offense was punishable, at the time of conviction, by death or a maximum term of imprisonment of more than one year; or
>
> (c)    the offense would have been classified as a felony in this state at the time of conviction.

Section 31-18-17(D). This Court previously held that the habitual offender statute should be read "as though the word 'and' was inserted between [sub-sections] (a) and (b)." *State v. Smith*, 2000-NMCA-101, ¶ 6, 129 N.M. 738, 13 P.3d 470. Thus, the habitual offender statute requires a sentence enhancement for out-of-state convictions when the sentence for the prior conviction was completed within ten years of the instant felony and the offense either was punishable by a maximum sentence of more than one year under the law of the other state, or would have been a felony under New Mexico law. Section 31-18-17(A), (D).

**{30}** Defendant concedes on appeal that the State presented sufficient evidence to establish his Arizona felony conviction for attempted armed robbery, and the record shows that his conviction resulted in a three-year adult sentence, notwithstanding Defendant's status as a juvenile. Thus, Defendant's Arizona conviction meets the above-described requirements for a prior felony conviction under the habitual offender statute.

**{31}** Nonetheless, Defendant argues that the district court erred by enhancing his sentence because Arizona automatically imposed an adult sentence for Defendant's juvenile conviction for attempted armed robbery, whereas under New Mexico law, similarly situated juveniles would be ineligible for an adult sentence for attempted armed robbery or, in the alternative, would receive an amenability hearing prior to the imposition of an adult sentence. For the reasons that follow, we disagree with Defendant's contention that differences between New Mexico and Arizona law prohibit the imposition of a sentence enhancement based on Defendant's prior Arizona conviction.

**{32}** Whether a prior felony conviction can be used for the purposes of sentence enhancement under the habitual offender statute is a question of law that we review de novo. *State v. Leon*, 2013-NMCA-011, ¶ 43, 292 P.3d 493. "In interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "We do this by giving effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. "If the language of the statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. McWhorter*, 2005-NMCA-133, ¶ 5, 138 N.M. 580, 124 P.3d 215. "[I]n applying the plain meaning rule, this Court must exercise caution because its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate . . . differences of opinion concerning the statute's meaning." *State v. Martinez*, 2006-NMCA-068, ¶ 5, 139 N.M. 741, 137 P.3d 1195 (alteration, internal quotation marks, and citation omitted).

**{33}** The habitual offender statute mandates sentence enhancement for prior felony convictions "rendered by a court of another state" that were either "punishable, at the time of conviction, by death or a maximum term of imprisonment of more than one year" or would have been classified as a felony in New Mexico at the time of the offense.

Section 31-18-17(A), (D)(2). By requiring sentence enhancement for convictions that meet either of these two criteria, the statute in effect treats all felonies alike, despite differences between the laws of various jurisdictions, and without inquiry into the nature of those differences. Because the plain language of the statute is "clear and unambiguous," we "refrain from further statutory interpretation." *McWhorter*, 2005-NMCA-133, ¶ 5.

**{34}** Defendant argues that we should limit sentence enhancement to out-of-state felony convictions where juvenile defendants received the same procedural safeguards as those in New Mexico. This argument, in essence, asks us to add requirements to the habitual offender statute beyond those written by our Legislature and disregards the plain language of the statute, which recognizes differences between the laws of jurisdictions and treats all felony convictions the same for the purpose of sentence enhancement. *See State v. Moya*, 2007-NMSC-027, ¶ 9, 141 N.M. 817, 161 P.3d 862 (requiring interpretation of a statute "in its entirety, so that each part of the statute is given meaning and no part is superfluous"); *see also GandyDancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 22, 453 P.3d 434 ("This Court applies the principles of statutory construction to give effect to every phrase unless there is an obvious mistake or error."). If the Legislature intended to limit sentence enhancements to only out-of-state convictions with the same procedural safeguards for juveniles as those in New Mexico, it presumably would have done so. Because Defendant's Arizona felony conviction meets the requirements laid out in the habitual offender statute, and because the statute plainly does not exempt enhancement for prior convictions rendered under procedural protections different from those in New Mexico, we hold that Defendant's sentence was properly enhanced.

**{35}** We note that our holding is consistent with *Leon*, in which this Court addressed the applicability of the habitual offender statute to in-state juvenile convictions. 2013-NMCA-011, ¶¶ 42-45. In *Leon*, we examined the language of the habitual offender statute, which "applies to persons convicted of felonies whether they are convicted under the Criminal Code, Controlled Substances Act, 'or not[,]' " *Id.* ¶ 44 (citing Section 31-18-17(A)), as well as the Children's Code, which provides that " 'if a judgment on a proceeding under the Delinquency Act results in an adult sentence, the determination of guilt at trial becomes a conviction for the purposes of the Criminal Code.' " *Id.* ¶ 43 (quoting NMSA 1978, § 32A-2-18(C)) (alteration omitted). Relying on the plain language of these two statutes, we held that where a juvenile defendant "was sentenced as an adult, . . . and was convicted of a felony for the purposes of the Criminal Code, the habitual offender statute is applicable." *Id.* ¶¶ 44-45. Significantly, the analysis in *Leon* neither discussed nor relied on the procedural protections for juveniles for its decision that adult sentences imposed on juveniles in New Mexico are subject to the habitual offender statute. *See id.* ¶¶ 42-45.

**{36}** Defendant argues that this case is distinguishable from *Leon*, and, in the alternative, argues that *Leon* should be overturned. However, as described above, although our decision is consistent with *Leon*, it rests on the plain language of the habitual offender statute. Because our analysis does not rely on *Leon*, we do not reach

Defendant's now hypothetical arguments regarding the applicability and propriety of *Leon. See State v. Ordunez*, 2012-NMSC-024, ¶ 22, 283 P.3d 282 ("It is not within the province of an appellate court to decide abstract, hypothetical or moot questions in cases wherein no actual relief can be afforded." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{37}** For the foregoing reasons, we reverse Defendant's parole sentence and remand to the district for resentencing consistent with this opinion. We otherwise affirm.

**{38}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**I CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JANE B. YOHALEM, Judge**, **dissenting.**

**YOHALEM, Judge (dissenting).**

**{39}** I respectfully dissent from the majority's holding that the omission of the scienter element from the jury instruction on child solicitation was not fundamental error. As the majority notes, the jury instruction did not inform the jury that it was required to find, beyond a reasonable doubt, that Defendant knew that L.G. was under sixteen years of age at the time of the offense, an essential element of the crime of electronic solicitation of a child necessary to ensure that the statute does not extend too broadly to include conduct which is not criminal. *Ebert*, 2011-NMCA-098, ¶ 13 (stating that the "knowingly" scienter requirement of the child solicitation statute "ensures that communications are criminalized only when knowingly made to a child under the age of sixteen"). The majority concludes that the omission of the scienter element of child solicitation from the jury instructions was not fundamental error because "Defendant's knowledge of L.G.'s age was not at issue in this case." In my view, the majority has misconstrued the law governing when an element of a crime is "in issue" for purposes of the fundamental error analysis.

**{40}** "Fundamental error occurs when jury instructions fail to inform the jurors that the State has the burden of proving an essential element of a crime and we are left with no way of knowing whether the jury found that element beyond a reasonable doubt." *Samora*, 2016-NMSC-031, ¶ 29 (internal quotation marks and citation omitted); *see also* Rule 5-608(A) NMRA ("The court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury."). The court's failure to instruct on an essential element of a crime requires reversal unless "the jury's findings, in light of the undisputed evidence in the case, necessarily establish that the [omitted]

element was met beyond a reasonable doubt." *State v. Orosco*, 1992-NMSC-006, ¶ 15, 113 N.M. 780, 833 P.2d 1146. This is not such a case.

**{41}** In this case, the jury's conviction of child solicitation did not necessarily include an implicit finding supported by undisputed evidence that Defendant knew that L.G. was less than sixteen years of age. Although the jury found that L.G. was under thirteen years of age, and although that fact was not in dispute, the evidence at trial raised a question for the jury about whether Defendant knew that L.G. was under sixteen years of age.

**{42}** The evidence in this case showed that, although L.G. was twelve, she had told Adam Garcia, Defendant's cousin, on Snapchat that she was sixteen. L.G. testified at trial that, although she remembered telling Defendant her age, she could not remember whether the age she told him was twelve. There was also evidence that some of L.G. texts to Defendant made her sound older than she was. It would not be unreasonable for a jury to decide that this evidence raised a reasonable doubt about whether Defendant knew L.G. was less than sixteen years of age. Because the jury was not instructed that they needed to find this element beyond a reasonable doubt, we have no way of knowing how the jury resolved or might have resolved the question of Defendant's knowledge of L.G.'s age had it been properly instructed.

**{43}** The majority holds that Defendant's knowledge of L.G.'s age was not in issue and therefore its omission from the jury instruction was not fundamental error because Defendant never argued at trial that he did not know that L.G. was less than sixteen years of age. I do not believe that our precedent supports the majority's reliance on Defendant's failure to argue the omitted element to conclude that the omitted element was not in issue. Our Supreme Court addressed the relevance of a defendant's trial strategy to the fundamental error analysis in its opinion in *Orosco*. 1992-NMSC-006, ¶ 10. The Court recognized that a defendant might, as a matter of trial strategy, prefer to deny that the incident occurred, rather than admit it occurred and claim it was lawful, or, in this case, that Defendant lacked knowledge of the victim's age. *Id.* The Court holds that the key question is not whether the defendant put the element in issue, but "whether there was any evidence or suggestion in the facts, however slight, that could have put the element . . . in issue." *Id.* The Court goes on to explain that it must be "not only undisputed but indisputable" that the element was established by the state to support a finding that the element is "not in issue" and its absence from the jury instruction, therefore, not fundamental error. *Id.* ¶ 13.

**{44}** I do not believe that the evidence in this case concerning Defendant's knowledge that L.G. was less than sixteen years of age was either undisputed or indisputable, as required by *Orosco*. There is some "evidence or suggestion in the facts, however slight, that could have put the element . . . in issue." *Orosco*, 1992-NMSC-006, ¶ 10. Therefore, a jury instruction on this essential element of child solicitation was necessary and the omission of an instruction was fundamental error. The majority holding otherwise, I respectfully dissent. I would reverse and remand for a new trial.

**{45}** I note that I also dissent from the majority's holding in Section II of this opinion concerning the application of the sexual offender parole statute, for the reasons expressed in my dissent in *Sena*, 2021-NMCA-____.

**JANE B. YOHALEM, Judge**